132 T.C. No. 1


UNITED STATES TAX COURT


JEROME R. VAINISI, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

DORIS L. VAINISI, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 23699-06, 23701-06.  Filed January 15, 2009.


        Ps are shareholders in X, an S corporation.  X is
the sole shareholder of QSub Bank, a sec.
1361(b)(3)(B), I.R.C., qualified subch. S subsidiary
bank.  In 2003 and 2004, QSub Bank had interest income
relating to qualified tax-exempt obligations (QTEOs).
On 2003 and 2004 consolidated Federal income tax
returns which included QSub Bank, X deducted the full
amount of interest expenses relating to QSub Bank's
QTEOs.  Subsequently, R, in notices of deficiency to Ps
and, pursuant to sec. 291(a)(3), I.R.C., reduced the
2003 and 2004 interest expense deductions relating to
the QTEOs.

        Held:  In calculating taxable income, pursuant to
sec. 1361(b)(3)(A), I.R.C., and sec. 1.1361-4(a)(3),

Income Tax Regs., Ps must, pursuant to sec. 291(a)(3),
I.R.C., reduce interest expense deductions relating to
QSub Bank's QTEOs.


Frank J. O'Connell, Jr., for petitioners.

Lawrence C. Letkewicz and Christa A. Gruber, for respondent.


OPINION


FOLEY, Judge: After concessions, the sole remaining issue for decision is whether section 291(a)(3)[1] applies to a qualified subchapter S subsidiary bank. The parties submitted this case fully stipulated pursuant to Rule 122.

## Background

Petitioners Jerome Vainisi and Doris Vainisi own 70.29 percent and 29.71 percent, respectively, of First Forest Park Corp. (First Forest), which was incorporated as a C corporation in 1973. First Forest owns 100 percent of Forest Park National Bank and Trust Co. (the Bank), which qualifies as a bank pursuant to section 581. Effective January 1, 1997, First Forest elected to be treated as an S corporation pursuant to section 1361(a)(1) and (b)(1) and for the Bank to be treated as a qualified subchapter S subsidiary (QSub) pursuant to section 1361(b)(3)(B).

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

In 2003 and 2004, the Bank held debt instruments which, pursuant to section 265(b)(3)(B), were qualified tax-exempt obligations (QTEOs). The interest on debt relating to the QTEOs was subject to more favorable interest deduction disallowance rules than interest relating to nonqualified tax-exempt obligations. In 2003, the Bank received $5,879,609 in interest income, $380,060 of which was attributable to QTEOs. In 2004, the Bank received $5,487,072 in interest income, $290,575 of which was attributable to QTEOs. On 2003 and 2004 consolidated Federal income tax returns which included the Bank, First Forest deducted interest expenses of $1,269,783 relating to 2003 and $1,048,994 relating to 2004 (interest expense deductions). First Forest deducted the entire amount of its interest expenses relating to the QTEOs.

In a notice of deficiency issued to Jerome Vainisi on August 21, 2006, respondent determined a $19,204 deficiency relating to 2003, a $17,133 deficiency relating to 2004, and a $3,841 accuracy-related penalty relating to 2003. In a notice of deficiency issued to Doris Vainisi on the same date, respondent determined deficiencies of $6,306 and $3,124 relating to 2003 and 2004, respectively.

On November 20, 2006, petitioners, while residing in Illinois, filed their petitions with the Court. On August 21,

2007, petitioners' cases were consolidated pursuant to parties' joint motion.

## Discussion

In 1982, Congress enacted section 291, which provides special rules relating to the tax treatment of corporate preference items, including financial institution preference items. See Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, sec. 204(a), 96 Stat. 423. Section 291(a)(3) provides that "The amount allowable as a deduction * * * with respect to any financial institution preference item shall be reduced by 20 percent." The 20-percent reduction set forth in section 291(a)(3) generally applies to "Interest on debt to carry tax-exempt obligations acquired after December 31, 1982, and before August 8, 1986", whereas a total disallowance[2] generally applies to interest on debt to carry tax-exempt obligations acquired after August 7, 1986. Secs. 291(e)(1)(B), 265(b)(2). There are, however, certain obligations issued after August 7, 1986, to which section 291(a)(3) continues to apply. Secs. 291(e)(1)(B)(iv), 265(b)(3). Pursuant to section 265(b)(3)(A), QTEOs are treated as if they were acquired on August 7, 1986,

---

[2] Sec. 265(b)(1) provides: "In the case of a financial institution, no deduction shall be allowed for that portion of the taxpayer's interest expense which is allocable to tax-exempt interest." (Emphasis added.)

and, therefore, are subject to the more favorable 20-percent interest expense reduction set forth in section 291(a)(3).

In 1996, section 1361, which governs the election and treatment of S corporations, was amended to allow certain financial institutions to elect to be treated as S corporations. See Small Business Job Protection Act of 1996 (SBJPA), Pub. L. 104-188, sec. 1315, 110 Stat. 1785; sec. 1361(b)(1), (2), and (3)(A). The amendment also allowed an S corporation to elect to treat its wholly owned subsidiary as a QSub. See SBJPA sec. 1315; sec. 1361(b)(1), (2), and (3)(A). Because S corporations are passthrough entities, their items of income and expenses pass through to, and are reported by, their shareholders. As originally enacted, section 1361(b)(3)(A) provided that when a QSub election is made, the subsidiary no longer exists as a separate corporation and all of its assets, liabilities, items of income, deductions, and credits are treated as those of the parent S corporation (disregarded entity rule). See SBJPA sec. 1315.

The U.S. Department of the Treasury (Treasury) was concerned that the interaction between the disregarded entity rule and special banking rules created unintended and inappropriate results. In response, in 1997, Treasury issued guidance alerting taxpayers to this issue and notifying taxpayers that Treasury was working with Congress on an appropriate technical correction.

See Notice 97-5, 1997-1 C.B. 352.  In the same year, Congress enacted a technical correction to section 1361(b)(3)(A) to address Treasury's concern.  See Taxpayer Relief Act of 1997, Pub. L. 105-34, sec. 1601, 111 Stat. 1086.  As amended, section 1361(b)(3)(A) provides:

> In general.--<u>Except as provided in regulations prescribed by the Secretary</u>, for purposes of this title--
>
>    (i) a corporation which is a qualified subchapter S subsidiary shall not be treated as a separate corporation, and
>
>    (ii) all assets, liabilities, and items of income, deduction, and credit of a qualified subchapter S subsidiary shall be treated as assets, liabilities, and such items (as the case may be) of the S corporation. [Language added by amendment underscored.]

Thus, the technical correction to section 1361(b)(3)(A) grants the Secretary the authority to issue regulations providing exceptions to the disregarded entity rule.  In January 2000, the Secretary issued the final version of section 1.1361-4(a)(3), Income Tax Regs., which states:

>    (3) Treatment of banks.--(i) In general.--If an S corporation is a bank, or if an S corporation makes a valid QSub election for a subsidiary that is a bank, <u>any special rules applicable to banks under the Internal Revenue Code continue to apply separately to the bank parent or bank subsidiary as if the deemed liquidation of any QSub under paragraph (a)(2) of this section had not occurred</u> (except as other published guidance may apply section 265(b) and section 291(a)(3) and (e)(1)(B) not only to the bank parent or bank subsidiary but also to any QSub deemed to have liquidated under paragraph (a)(2) of this section). For any QSub that is a bank, however, all assets,

> liabilities, and items of income, deduction, and credit of the QSub, <u>as determined in accordance with the special bank rules</u>, are treated as assets, liabilities, and items of income, deduction, and credit of the S corporation. For purposes of this paragraph (a)(3)(i), the term bank has the same meaning as in section 581. [Emphasis added.]

Thus, pursuant to section 1361(b)(3)(A) and section 1.1361-4(a)(3), Income Tax Regs., the special bank rules (e.g., special bank rules in section 291) continue to apply separately to each QSub that is a bank (QSub bank) and each QSub bank must determine its income and deductions (i.e., by applying special bank rules like section 291) before the QSub bank's income and deductions can be treated as income and deductions of the S corporation parent.

The Bank, not First Forest, held the QTEOs. Therefore, the focus of our analysis is on the statutes and regulations relating to QSub banks (i.e., whether deductions relating to QTEOs held by a QSub bank are subject to section 291).[3] To the contrary, petitioners focus their analysis on First Forest, the S corporation. Petitioners emphasize that section 1363(b)(4), which sets forth the computation of an S corporation's taxable income, provides that section 291 applies if the S corporation was a C corporation for any of the 3 immediately preceding taxable years. See sec. 1363(b)(4). Petitioners' primary

---

[3] We need not, and do not, decide whether sec. 1363(b)(4) precludes the application of sec. 291(a)(3) to S corporation banks.

contention is that the interest expense deductions are not subject to section 291(a)(3) because in 2003 and 2004 First Forest had been an S corporation for more than 3 years. The fact that First Forest had been an S corporation for more than 3 years is, however, irrelevant because section 1363(b)(4) is not applicable to the Bank.

Section 1363(b)(4) specifically references S corporations, but it does not mention QSubs or banks. In fact, in 1984 when Congress added section 1363(b)(4) to the Code, QSubs did not exist and banks were not permitted to be S corporations. See Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 721(p), 98 Stat. 970; SBJPA sec. 1315. At any time after the enactment of section 1363(b)(4) (e.g., in 1997 when Congress added the technical correction to section 1361(b)(3)(A)), Congress could have extended section 1363(b)(4) to QSub banks. Congress did not do so, nor will we. See United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989) ("where, as here, the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" (quoting Caminetti v. United States, 242 U.S. 470, 485 (1917))).

We agree with respondent that the plain language of section 1361(b)(3)(A) and section 1.1361-4(a)(3), Income Tax Regs., establishes that subsection 291(a)(3) applies to QSub banks.

Yet, petitioners have failed to effectively address why section 1361(b)(3)(A) and regulations thereunder are not applicable.

Petitioners contend, in the alternative, that section 1.1361-4(a)(3), Income Tax Regs., "[exceeds] the authority granted under the 1997 Act" and "[overrides] the plain language of the statute." We disagree. The House Budget Committee and Senate Finance Committee reports relating to the enactment of the technical correction both state:

> The technical correction provides that the Secretary of the Treasury may provide, by regulations, instances where the separate corporate existence of a qualified subchapter S subsidiary may be taken into account for purposes of the Code. Thus, if an S corporation owns 100 percent of the stock of a bank (as defined in sec. 581) and elects to treat the bank as a qualified subchapter S subsidiary, it is expected that Treasury regulations would treat the bank as a separate legal entity for purposes of those Code provisions that apply specifically to banks (e.g., sec. 582).

H. Rept. 105-148, at 644 (1997), 1997-4 C.B. (Vol. 1) 319, 966; S. Rept. 105-33, at 319-320 (1997), 1997-4 C.B. (Vol. 2) 1067, 1399-1400. Section 1.1361-4(a)(3), Income Tax Regs., is consistent with both the plain language of the technical correction and its legislative history. Accordingly, pursuant to section 1361(b)(3)(A) and section 1.1361-4(a)(3), Income Tax Regs., the Bank is subject to the 20-percent interest expense reduction set forth in section 291(a)(3).

Contentions we have not addressed are irrelevant, moot, or meritless.

To reflect the foregoing,

<u>Decisions will be entered</u>

<u>under Rule 155</u>.