# United States Tax Court

T.C. Memo. 2026-8

JABIR ALGARAWI AND AMIRA HACHIM,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 6824-24.                                    Filed January 26, 2026.

————

Jabir Algarawi and Amira Hachim, pro sese.

*Michael R. Harrel* and *Elizabeth K. Sichi*, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PUGH, *Judge*: In a Notice of Deficiency dated January 22, 2024, respondent determined deficiencies in petitioners' federal income tax of $18,855 for 2020 and $24,138 for 2021 attributable to unreported income. Respondent also determined that petitioners were liable for accuracy-related penalties under section 6662(a)[1] of $3,771 for 2020 and $4,827.60 for 2021.

The issues remaining for decision are whether petitioners (1) received discharge of indebtedness income of $5,615 in 2020; (2) had unreported business income of $72,130 for 2020 and $93,614 for 2021; and (3) are liable for accuracy-related penalties due to substantial

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

[*2] understatements of income tax, or, in the alternative, negligence.[2] We also must address a related evidentiary issue of whether Exhibits 22-P through 27-P should be excluded from the record.

FINDINGS OF FACT

Petitioners resided in Arizona when they timely filed their Petition. Petitioners timely filed their joint Forms 1040, U.S. Individual Income Tax Return, for 2020 and 2021.

I.    *Tax preparation*

Mr. Algarawi was the president of a refugee community center, the Arizona Allnation Refugee Resource Center (Allnation). In addition to employment as a real estate broker, Mr. Algarawi prepared tax returns through his sole proprietorship, Ali Tax Income. He prepared 1,294 returns in 2020 and 1,953 returns in 2021.

While Mr. Algarawi charged some clients for tax preparation services, he did not charge others, namely refugees from Central Asia and the Middle East. Mr. Algarawi encouraged clients to donate to Allnation using a "donation box" outside his office. Mr. Algarawi did not keep records of the cash deposits, nor did he give the donors receipts. Mr. Algarawi deposited the cash into his personal bank account; Allnation did not maintain a separate bank account.

Mr. Algarawi also received funds through a Facebook group focused on helping the refugee community. Members of the group solicited donations through posts for particular families in need. The posts directed donors to Mr. Algarawi, who received the funds through his Zelle account connected to his cell phone number. Mr. Algarawi did not keep records of the donors or the amounts of their contributions, nor

---

[2] When we called this case for trial Jabir Algarawi appeared, but Amira Hachim did not. As a result of her failure to appear, we find that she is in default and hold that she is bound by the outcome of this case. *See* Rule 123(a) (stating that any party failing "to plead or otherwise proceed as provided by these Rules or as required by the Court . . . may be held in default by the Court"); Rule 149(a) ("The unexcused absence of a party or a party's counsel when a case is called for trial will not be ground for delay. The case may be dismissed for failure properly to prosecute, or the trial may proceed and the case be regarded as submitted on the part of the absent party or parties.").

[*3] did he maintain any records of recipients of donations or the amounts that they received.

On Schedules C, Profit or Loss From Business, attached to their 2020 and 2021 returns, petitioners reported $12,548 and $12,458, respectively, in gross receipts from Ali Tax Income.

## II. *Citibank indebtedness*

In 2020 Citibank, N.A., issued to Mr. Algarawi Form 1099–C, Cancellation of Debt, reporting $5,615 in cancellation of debt income. Citibank used a description of the debt of "The Home Depot Commercial Revolving" and checked the box that Mr. Algarawi was personally liable for repayment of the debt.

## III. *Respondent's determinations*

A revenue agent performed a bank deposits analysis for tax years 2020 and 2021 by reviewing petitioners' bank accounts, adding up all of their deposits, and subtracting all nontaxable items and transfers. The analysis showed that petitioners underreported their gross receipts by $72,130 for 2020 and $93,614 for 2021. The record includes a Civil Penalty Approval Form signed by the revenue agent's immediate supervisor, dated December 1, 2023.

## OPINION

## I. *Burden of proof*

The taxpayer generally bears the burden of proving the determinations set forth in a Notice of Deficiency are in error. *See* Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). The burden of proof may shift to the Commissioner if the taxpayer introduces credible evidence with respect to the issue and satisfies certain conditions. § 7491(a)(1) and (2). Petitioners have not alleged that section 7491(a) applies, nor have they complied with substantiation requirements or maintained adequate records. *See* § 7491(a)(2). Therefore, the burden of proof generally remains with petitioners.

In the case of unreported income the Commissioner must establish "some evidentiary foundation" connecting the taxpayer with the income-producing activity, *Weimerskirch v. Commissioner*, 596 F.2d 358, 361–62 (9th Cir. 1979), *rev'g* 67 T.C. 672 (1977), or otherwise demonstrate that the taxpayer received unreported income, *Edwards v.*

[*4] *Commissioner*, 680 F.2d 1268, 1270–71 (9th Cir. 1982) (per curiam); *Walquist v. Commissioner*, 152 T.C. 61, 67 (2019). In the U.S. Court of Appeals for the Ninth Circuit, the court to which appeal in this case would lie absent a stipulation to the contrary, *see* § 7482(b)(1)(A), (2), the presumption attaches when the Commissioner introduces an evidentiary foundation to show that the taxpayer received the unreported income, *Hardy v. Commissioner*, 181 F.3d 1002, 1004 (9th Cir. 1999), *aff'g* T.C. Memo. 1997-97. Once the Commissioner has met this threshold, the burden shifts to the taxpayer, who must establish by a preponderance of the evidence that the deficiency determination was erroneous. *Id.* Because the bank deposits analysis connects petitioners with the income-producing activity, the burden of proving that respondent's determinations are wrong shifts back to petitioners.

II.     *Petitioners' unreported income*

   A.     *Discharge of indebtedness*

Section 61(a) provides that gross income includes "all income from whatever source derived." Gross income also generally includes income from the discharge of indebtedness, subject to the exclusions in section 108(a). *See* § 61(a)(11).

Petitioners do not dispute that they received income through the cancellation of credit card debt in 2020. Nor do they allege or offer any evidence to suggest that the income is subject to one of the exclusions in section 108(a).

Rather Mr. Algarawi stated at trial that he did not receive a Form 1099 for the cancellation of the debt. But "nonreceipt of a Form 1099 does not convert taxable income into nontaxable income." *See Rinehart v. Commissioner*, T.C. Memo. 2002-71, 2002 WL 459098, at *2 (citing *Vaughn v. Commissioner*, T.C. Memo. 1992-317, *aff'd*, 15 F.3d 1095 (9th Cir. 1993) (unpublished table decision)). Because petitioners received discharge of indebtedness income that is not subject to one of the section 108(a) exclusions, we sustain respondent's determination.

   B.     *Unreported gross receipts*

Section 6001 requires that each person maintain books and records "sufficient to show whether or not such person is liable for tax." *See also DiLeo v. Commissioner*, 96 T.C. 858, 867 (1991), *aff'd*, 959 F.2d 16 (2d Cir. 1992).

**[\*5]** The Internal Revenue Service may compute an individual's taxable income by any method that clearly reflects income when the individual does not maintain adequate books and records. *See* § 446(b). Bank deposits are "prima facie evidence of income." *Tokarski v. Commissioner*, 87 T.C. 74, 77 (1986). And "[t]he use of the bank deposit method for computing unreported income has long been sanctioned by the courts." *Estate of Mason v. Commissioner*, 64 T.C. 651, 656 (1975), *aff'd*, 566 F.2d 2 (6th Cir. 1977). Mr. Algarawi did not maintain books and records for Ali Tax Income as required. And respondent, through the bank deposits method, determined that petitioners received unreported income.[3]

### 1. *Petitioners' proof*

Petitioners contend that this unreported income represents donations. Mr. Algarawi testified that he prepared some clients' returns free of charge and that community members made donations in acknowledgment of his services. Mr. Algarawi further stated that he used these contributed funds directly to pay the expenses (e.g., rent and utilities) of families in need.

Petitioners failed to introduce any admissible evidence corroborating Mr. Algarawi's testimony.[4] At trial petitioners offered Exhibits 22-P through 27-P to show that Mr. Algarawi provided free tax preparation services to the community, received money from community members, and gave money to other community members in need. Respondent objected on the basis of untimely disclosure, hearsay, and relevance; we reserved ruling on their admissibility.

---

[3] Petitioners did not contend, nor do we find evidence to suggest, that any portion of the gross receipts that petitioners did report for Ali Tax Income were included as unreported income in respondent's bank deposits analysis.

[4] Mr. Algarawi requested a continuance when this case was called from the calendar at the April 28, 2025, Phoenix, Arizona, trial session, seeking additional time to produce witnesses to testify in support of his case in chief. However, this case had been set for trial by notice and order issued December 2, 2024, and Mr. Algarawi did not explain why he had not tried to secure witness testimony sooner or sought a continuance earlier than the morning of trial. Moreover, petitioners did offer into evidence letters dated just before trial from potential witnesses. We explain below why these documents would not fill the holes in Mr. Algarawi's proof even were we to conclude they are admissible. These documents likewise suggest that the testimony of Mr. Algarawi's proposed witnesses would not fill the evidentiary gap left by the lack of any contemporaneous records.

**[\*6]** Exhibit 22-P is a letter from Allnation dated April 24, 2025, commending Mr. Algarawi for his humanitarian efforts and for offering free tax return preparation services to community members. Exhibits 23-P and 26-P are letters from community members dated April 21 and April 10, 2025, respectively, stating that Mr. Algarawi did not charge for the tax return preparation services provided. Exhibits 24-P and 25-P are letters both dated April 21, 2025, from two community members stating that the money paid to Mr. Algarawi was intended to be a charitable contribution. And Exhibit 27-P is a letter dated April 20, 2025, from a community member stating that Mr. Algarawi gave money to help pay her family's rent.

The Standing Pretrial Order issued to the parties states that the parties should file a stipulation of facts with the Court at least 14 days before the date set for trial and that parties should exchange all other documents expected to be used at trial at least 14 days before the date set for trial.

Rule 131(b) states that failure to comply with a standing pretrial order may subject a party to sanctions. The Standing Pretrial Order warns that one possible sanction for violating the 14-day rule is the exclusion of evidence that was not exchanged in accordance with that requirement. *See Rodriguez v. Commissioner*, T.C. Memo. 2017-173, at \*5 (citing *Moretti v. Commissioner*, 77 F.3d 637, 644 (2d Cir. 1996)). The 14-day rule is intended to allow the opposing party the opportunity to review evidence to prepare any challenge or rebuttal. *Kornhauser v. Commissioner*, T.C. Memo. 2013-230, at \*9 n.4 (citing *Dunn v. Commissioner*, T.C. Memo. 1988-45), *aff'd*, 632 F. App'x 421 (9th Cir. 2016). "[T]he rule prevents an 'ambush' with last-minute evidence that could have been presented to the opposing party during preparation for trial." *Id.*

In weighing the appropriate sanction for violation of the 14-day rule, we consider whether the opposing party was prejudiced by the failure. *See, e.g.*, *Thompson v. Commissioner*, T.C. Memo. 2011-291, 2011 WL 6382704, at \*2 n.8; *Morris v. Commissioner*, T.C. Memo. 2008-65, 2008 WL 704208, at \*1, *aff'd*, 431 F. App'x 535 (9th Cir. 2011). We also consider why a party failed to comply with the standing pretrial order, and whether that party had good cause. *See Kaplan v. Commissioner*, T.C. Memo. 2016-149, at \*9–10.

Mr. Algarawi's late production of documents prejudiced respondent as respondent did not have sufficient time to review and

**[\*7]** independently verify the documents. *See Enis v. Commissioner*, T.C. Memo. 2017-222, at \*24, \*26. Nor did Mr. Algarawi offer any explanation for his failure to provide the documents earlier.

Beyond their untimely disclosure, Exhibits 22-P through 27-P constitute hearsay. *See* Rule 143(a); Fed. R. Evid. 802. We have not identified an applicable exception to the hearsay rule, nor have petitioners raised one. *See* Fed. R. Evid. 803. The proposed Exhibits therefore would have limited utility as evidence.

Finally, even if we were to admit these documents, they would not help us resolve the issue that we must decide here: whether the deposits into petitioners' accounts identified in the bank deposits analysis were taxable income to petitioners.

### 2. *Purported donations*

Gross income includes all income from whatever source derived, § 61(a), including "deposits into all accounts over which the taxpayer has dominion and control," *Chambers v. Commissioner*, T.C. Memo. 2011-114, 2011 WL 2135376, at \*7; *see also Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 431 (1955). Mr. Algarawi argues in effect that the deposits into his accounts constituted charitable contributions from some individuals that he passed along to other individuals. Under this theory, because he was not the ultimate recipient of the deposits but rather a conduit between the original donor and the ultimate intended recipient, these amounts do not constitute income to him under section 61(a). Aside from the letters discussed above, written years after the deposits being questioned, he offers no evidence tying specific deposits to the ultimate recipients. With no evidence showing which deposits were passed along, we cannot conclude on this record that Mr. Algarawi did not have dominion and control over any particular deposits. Therefore, even if we accept his legal theory, we are unable to exclude any particular deposits from petitioners' gross income because he has no proof to back any exclusion.[5]

---

[5] Petitioners likewise could not claim a charitable contribution deduction for using the funds to support community members in need, even if they could establish the amounts. Funds given directly to an individual for personal benefit are deemed gifts; these funds are not deductible charitable contributions because they are not given to a qualified organization. *See* § 170(c); *Thomason v. Commissioner*, 2 T.C. 441, 443 (1943); *Dohrmann v. Commissioner*, 18 B.T.A. 66, 69 (1929).

**[\*8]**   Nor can we conclude that the deposits at issue represented donations Mr. Algarawi collected on behalf of Allnation. Neither Ali Tax Income nor Allnation provided receipts to the purported donors, and Mr. Algarawi deposited the funds into his personal bank accounts. Petitioners did not introduce any evidence showing corresponding transfers to Allnation, in part because Allnation did not maintain a separate bank account. Other potential legal theories are equally unavailing on this record. Only qualified charitable organizations may accept donations on a tax-exempt basis. *See* § 501(a). And petitioners do not contend that these amounts constitute excludable gifts to petitioners. *See* § 102(a); *Commissioner v. Duberstein*, 363 U.S. 278, 285 (1960).

We do not question petitioners' desire to support refugees in their community, but the gaps in petitioners' proof, especially given Mr. Algarawi's occupation as a paid tax return preparer, sink their arguments.

### 3.      *Subsequent arguments*

In a letter submitted to the Court after trial, petitioners raise two additional arguments.[6] First, petitioners offer unsigned amended returns for both 2020 and 2021, along with accompanying Forms 1099–NEC, Nonemployee Compensation. Second, petitioners state that they should be entitled for a "sick leave and family leave" credit because of COVID–19.[7]

Rule 34(b)(1)(G) provides that issues not raised in the petition are deemed conceded. Petitioners did not raise these issues in a pretrial memorandum, nor did they offer any evidence supporting these arguments during trial. And while the Court has discretion to reopen the record, we generally consider whether the moving party knew that a fact was disputed, whether the evidentiary issue was foreseeable, and whether the moving party had a good reason for the late production of evidence. *See, e.g., Nurumbi v. Commissioner*, T.C. Memo. 2021-79, at \*9 (citing *George v. Commissioner*, 844 F.2d 225, 229–30 (5th Cir. 1988), *aff'g Frink v. Commissioner*, T.C. Memo. 1984-669). We also consider whether admitting this evidence late would prejudice respondent, who

---

[6] At the conclusion of trial the Court invited petitioners to file an informal letter in lieu of posttrial briefing. We have considered both petitioners' letter and respondent's response.

[7] We infer that petitioners mean the credit allowed under the Families First Coronavirus Response Act, Pub. L. No. 116-127, § 7001, 134 Stat. 178, 210–12 (2020).

**[\*9]** could not examine or question the evidence as he might have at trial. *See id.* at \*9–10.

Petitioners offer no explanation for their failure to raise these issues earlier, and respondent did not have an opportunity to review and question evidence at trial. Nor did petitioners in their letter offer any proof of entitlement to a credit under section 7001 of the Families First Coronavirus Response Act. Petitioners have not met their burden of proof, and therefore we sustain respondent's determinations.

III.    *Section 6662 penalties*

Section 6662(a) imposes an accuracy-related penalty equal to 20% of the portion of an underpayment of tax required to be shown on a return that is attributable to a "substantial understatement of income tax" or "[n]egligence or disregard of rules or regulations." *See* § 6662(b)(1) and (2). An understatement of income tax is "substantial" if it exceeds the greater of 10% of the tax required to be shown on the return or $5,000. § 6662(d)(1)(A). Negligence is defined as "any failure to make a reasonable attempt to comply" with the Internal Revenue Code and disregard includes "careless, reckless, or intentional disregard." § 6662(c).

The Commissioner generally bears the burden of production with respect to a taxpayer's liability for accuracy-related penalties. § 7491(c). In particular the Commissioner must show that he complied with the procedural requirements of section 6751(b)(1) for the accuracy-related penalties imposed. § 7491(c). Section 6751(b)(1) provides that "[n]o penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination or such higher level official as the Secretary may designate."

Once the Commissioner satisfies the burden of production, the taxpayer bears the burden of proving that the Commissioner's determination is incorrect or that the taxpayer has an affirmative defense such as reasonable cause. *See* § 6664(c); Rule 142(a); *Higbee v. Commissioner*, 116 T.C. 438, 446–47 (2001). We decide whether a taxpayer acted with reasonable cause and in good faith on a case-by-case basis, taking into account all pertinent facts and circumstances. *See* Treas. Reg. § 1.6664-4(b)(1). Circumstances that may signal reasonable cause and good faith "include an honest misunderstanding of fact or law

**[*10]** that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer." *Id.*

For each year at issue respondent determined that petitioners are liable for an accuracy-related penalty attributable to a substantial understatement of income tax, or in the alternative, due to negligence or disregard of rules or regulations. Respondent showed that the understatement of income tax is substantial because it exceeds the greater of $5,000 or 10% of the tax required to be shown on their return for each year. And respondent also demonstrated that petitioners failed to keep adequate book and records or substantiate items properly. This failure is evidence of negligence. *See* Treas. Reg. § 1.6662-3(b). The examining agent's direct supervisor approved in writing the assertion of the accuracy-related penalties under section 6662 for the 2020 and 2021 tax years. Respondent therefore has met the burden of production, and we turn to whether petitioners have shown that the determinations are incorrect or that an affirmative defense such as reasonable cause exists.

Petitioners did not allege that the determinations are incorrect, and they have not met their burden of proving that they acted with reasonable cause and in good faith. Mr. Algarawi is a paid tax return preparer, having prepared over 3,000 tax returns during 2020 and 2021. Yet he kept no record of the alleged charitable contributions and did not maintain any (much less adequate) books and records for Ali Tax Income. We therefore hold that petitioners are liable for the accuracy-related penalties due to substantial understatements of income tax.

We have considered the parties' remaining arguments, and to the extent not discussed above, conclude those arguments are irrelevant, moot, or without merit.

To reflect the foregoing,

*Decision will be entered for respondent.*