T.C. Memo. 2020-149

UNITED STATES TAX COURT

COLLEEN MICHELLE LEITH, Petitioner, AND ORAINE J. LEITH,
Intervenor v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12275-17.                          Filed November 4, 2020.

Colleen Michelle Leith, pro se.

Oraine J. Leith, pro se.

Jeremy D. Cameron and Mark J. Tober, for respondent.

**[*2]** MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  Pursuant to section 6015(e)(1),[1] petitioner seeks review of respondent's determination that she is not entitled to relief from joint and several liability with respect to joint Federal income tax returns that she filed with her former spouse, intervenor, for 2010, 2011 and 2013 (years at issue). Respondent concedes and petitioner agrees that she is entitled to section 6015(f) relief for the tax items attributable to intervenor for the years at issue.  However, intervenor opposes relief.

We hold that petitioner is entitled to section 6015(f) relief to the extent of the tax items attributable to intervenor for the years at issue.

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*3]                          FINDINGS OF FACT

Some of the facts have been stipulated and are so found.[2]  The stipulation of facts and the accompanying exhibits are incorporated by this reference.  Petitioner resided in Florida at the time she filed the petition.

I.      Petitioner and Intervenor's Marriage

Petitioner and intervenor married on September 8, 2008, and during their marriage had two children.  Throughout 2009 petitioner was primarily a stay-at-home mom.  In late 2009 intervenor became unemployed.

Thereafter petitioner began working as a part-time waitress a few nights per week.  Meanwhile, intervenor and two other individuals started a business called Accelerated Waste Solutions of North America (AWSNA).  Through AWSNA, intervenor and his business partners provided junk removal and cleaning services for foreclosed homes.  Petitioner was not involved in the day-to day operations of AWSNA.  Nor was she involved in preparing AWSNA's books, records, and tax returns.

---

[2]  The Court held trial in this case before July 1, 2019, the effective date of sec. 6015(e)(7).  See Taxpayer First Act, Pub. L. No. 116-25, sec. 1203(b), 133 Stat. at 988 (2019).  Because petitioner filed her petition before July 1, 2019, sec. 6015(e)(7) does not apply to this case.  See Sutherland v. Commissioner, 155 T.C. __, __ (slip op. at 15-16) (September 8, 2020).

**[*4]**    Petitioner and intervenor had financial difficulties in 2010 and 2011.  To cope with their financial problems and keep his business running, intervenor withdrew $24,917 from his retirement account in 2010 and $9,120 in 2011. Petitioner tried to find employment in the mortgage industry, where she had previously worked.  Unable to do so, she picked up more restaurant shifts and switched to a full-time schedule.

Throughout their marriage petitioner and intervenor kept their finances separate.  Intervenor paid their household bills while petitioner paid for groceries and childcare expenses.  At all relevant times petitioner and intervenor maintained separate bank accounts.  Accordingly, petitioner could not ascertain the amount of income intervenor received from his business.

During the marriage intervenor controlled the preparation and filing of his and petitioner's joint income tax returns.  Intervenor retained JGS Tax Service (JGS) to prepare the 2010 and 2011 joint returns.[3]  He retained Brimmer, Burek, & Keelan LLP to prepare the 2013 joint return.  Petitioner provided intervenor with her tax documents but was not otherwise involved in the preparation of the returns.  Intervenor did not invite petitioner to join his meetings with their return preparers.  After the returns were prepared, intervenor provided petitioner the

---

[3] JGS was owned by a friend of intervenor's business partner.

[*5] signature pages only. He did not give petitioner an opportunity to review the returns before she signed them.[4]

## II. Tax Liabilities

### A. Tax Reporting and Understatement for 2010

Petitioner and intervenor filed their 2010 joint tax return on April 15, 2011, on which they reported: (1) wages of $24,715 for petitioner and $219 for intervenor, (2) gross receipts of $42,692 and expenses of $46,734 attributable to intervenor on Schedule C, Profit or Loss From Business, and (3) unreimbursed employee expenses of $17,810 attributable to intervenor on Schedule A, Itemized Deductions. Respondent issued petitioner and intervenor a refund of $11,026.

The parties stipulated that on March 19, 2012, respondent issued petitioner and intervenor a notice of deficiency for 2010 determining a deficiency of $7,588 and an accuracy-related penalty of $1,518. The notice of deficiency determined unreported taxable retirement income of $24,917 attributable to intervenor.

---

[4] Rev. Proc. 2013-34, sec. 2.03, 2013-43 I.R.B. 397, 397, states that a joint return signed by an individual under duress is not a valid return as to that individual. Petitioner does not contend that she was under duress when she signed the returns for the years at issue. Nor has she renounced those returns. We therefore find that petitioner intended to and did file joint returns with intervenor. See Ziegler v. Commissioner, T.C. Memo. 2003-282, 2003 Tax Ct. Memo LEXIS 282, at *8 (assuming that the taxpayer conceded the filing of a joint return or ratified the joint return that the nonrequesting spouse filed where she continued to assert her entitlement to sec. 6015(f) relief).

[*6] Petitioner and intervenor did not petition the Court for a deficiency redetermination.

On December 27, 2012, respondent issued petitioner and intervenor Form 4549, Income Tax Examination Changes, for their 2010 and 2011 tax years.[5] With respect to the joint return for 2010, respondent proposed an additional deficiency of $14,429 and an accuracy-related penalty of $2,885.80. The proposed additional deficiency resulted from respondent's: (1) determining unreported income of $1,413 that should have been reported on Schedule E, Supplemental Income and Loss, attributable to intervenor's interest in an S corporation, (2) disallowing all Schedule C deductions attributable to intervenor, (3) disallowing Schedule A unreimbursed expense deductions of $17,810 attributable to intervenor, and (4) resulting computational adjustments. As further described below, petitioner and intervenor consented to respondent's assessment of the proposed deficiency and accuracy-related penalty as determined in the Form 4549.

B.     Tax Reporting and Understatement for 2011

Petitioner and intervenor filed their joint income tax return for 2011 on April 15, 2012. On their 2011 joint return petitioner and intervenor reported

_____

[5] We discuss respondent's adjustments to petitioner and intervenor's 2011 joint return infra.

[*7] wages of $38,065. On Schedule A they reported unreimbursed employee expenses of $13,869. They also reported income and expenses on two Schedules C, both of which name intervenor as the proprietor. The Schedule C-1, which pertained to AWSNA, reported gross income of $33,125 and total expenses of $40,181. On the Schedule C-2, which described the principal business as "Deepwater Horizon", petitioner and intervenor reported gross income of $6,000 and total expenses of $9,614.

On the Form 4549 issued to petitioner and intervenor on December 27, 2012, see supra p. 6, respondent proposed a deficiency of $8,395 and an accuracy-related penalty of $1,679 for 2011. The proposed deficiency resulted from respondent's: (1) determining unreported retirement income of $9,120 attributable to intervenor, (2) disallowing all Schedule C-1 expense deductions attributable to intervenor, (3) disallowing all income and expense deductions reported on the Schedule C-2,[6] (4) disallowing unreimbursed employee business expense deductions of $13,869 attributable to intervenor,[7] (5) determining other income of

---

[6] Because the Schedule C-2 reports intervenor as the proprietor of the purported "Deepwater Horizon" business, we find that the disallowed Schedule C-2 expenses are intervenor's tax items.

[7] We note that the 2011 joint return includes Form 2106-EZ, Unreimbursed Employee Business Expenses. That form indicates that the unreimbursed

(continued...)

[*8] $6,000 attributable to petitioner,[8] and (6) resulting computational adjustments.

Petitioner and intervenor signed the Form 4549 consenting to assessments based on the adjustments listed thereon for 2010 and 2011.  Respondent subsequently assessed the deficiencies and accuracy-related penalties proposed on the Form 4549.  On June 11, 2013, respondent issued petitioner and intervenor a collection due process (CDP) notice for 2010 and 2011.

---

[7](...continued)
employee business expenses were claimed on behalf of petitioner.  However, the parties have stipulated that intervenor claimed the deduction for unreimbursed employee business expenses.  Intervenor has not sought to withdraw or modify the stipulation, and we decline to do so sua sponte.  We therefore find that the disallowed deduction for unreimbursed employee expenses is a tax item attributable to intervenor.

[8] Petitioner received these funds in settlement of a claim against an oil company.  Petitioner and intervenor reported the $6,000 settlement on the 2011 Schedule C-2.  Unbeknownst to petitioner, intervenor and his return preparer treated the $6,000 settlement as a business and reported various expenses on the Schedule C-2.  Respondent determined that petitioner and intervenor did not have a Schedule C-2 business, disallowed their Schedule C-2 deductions, reduced their Schedule C-2 gross receipts by $6,000, and moved that amount to other income.  Thus, no part of the deficiency is attributable to respondent's determination of other income because that determination is offset by the reduction of the Schedule C-2 gross receipts.

**[*9]** C.  2013 Underpayment

Petitioner and intervenor timely filed their 2013 joint income tax return on October 6, 2014, without remitting payment.  On their 2013 return they reported: (1) wages of $69,597 for intervenor and $49,398 for petitioner and (2) retirement income of $17,500 attributable to intervenor.  On November 29, 2014, petitioner and intervenor entered into an installment agreement with respondent for tax year 2013.  As of November 26, 2018, respondent's account transcript for petitioner and intervenor's 2013 tax year reflected an amount due of $5,320.02.

III.  Divorce

Petitioner and intervenor were divorced on April 14, 2015, when the 13th Judicial Circuit Court of Hillsborough County, Florida (circuit court), issued a final judgment of dissolution of marriage that incorporated a marital settlement agreement.  According to the marital settlement agreement, petitioner and intervenor agreed that they were each liable for half of their "debt with the Internal Revenue Service in the approximate amount of $36,000.00."  Intervenor also became obligated to pay petitioner child support of $209 per month.  Both parties were represented by counsel in the divorce proceedings, and both parties signed the marital settlement agreement.

**[*10]** IV.     Petitioner's Requests for Innocent Spouse Relief

A few months after divorcing intervenor, petitioner filed two Forms 8857, Request for Innocent Spouse Relief, with respondent's Cincinnati Centralized Innocent Spouse Operation (CCISO). CCISO received her first Form 8857 (first request) on March 21, 2016.[9]

In her first request petitioner identified 2010 and 2011 as the tax years for which she was seeking relief. She explained that she was not involved in preparing the joint returns other than providing intervenor with her tax documents. She further explained that she did not review the returns before they were filed and that she had no knowledge of the erroneous items on them.

Petitioner also checked several boxes indicating that intervenor (1) made her afraid to disagree with him, (2) criticized or insulted her or frequently put her down, and (3) caused her to fear for her safety. She recounted finding several knives under her mattress during a tense time in her marriage to intervenor. She also stated that she "was constantly in fear" of intervenor's "moods". However, she mistakenly checked the "No" box in response to a question of whether she had been a victim of spousal abuse or domestic violence. After discovering this mistake petitioner filed a second Form 8857 (second request).

---

[9] Petitioner's first request is dated February 16, 2016.

[*11] On May 9, 2016, CCISO received petitioner's second request.[10] Therein she requested relief for tax years 2009 through 2013 and checked the "Yes" box as to whether she had been a victim of spousal abuse or domestic violence. Petitioner attached to the second request a letter in which she described incidents where intervenor's abusive behavior had prompted her to call the police. The letter recounts an incident where intervenor locked petitioner out of the house when she was pregnant because he was angry that petitioner had left their house to run an errand. Petitioner wrote in her letter that she called the police, who urged intervenor to vacate the premises.

Petitioner's letter recounts another occasion during which intervenor became drunk and escalated an argument by screaming at petitioner and kicking household objects. The letter also recounts intervenor's stashing of kitchen knives under their mattress, causing petitioner to fear for her and her daughters' safety.

In the second request petitioner reported total monthly income of $5,210 and total monthly expenses of $5,077. She reported having a retirement account valued at $4,000, $100 in savings, and $100 in her checking account. Although petitioner was able to return to the mortgage industry in 2013, she continues to struggle financially.

---

[10] Petitioner's second request is dated April 28, 2016.

[*12] In response to petitioner's first and second requests, intervenor filed two Forms 12508, Questionnaire for Non-Requesting Spouse. On the second of those forms intervenor alleged, among other things, that petitioner had: (1) helped prepare their tax returns, (2) reviewed the returns before filing them, and (3) known how much money was in their bank accounts.

CCISO assigned petitioner's requests to Tax Examiner (TE) E. Bowman. Relying on intervenor's allegations, TE Bowman believed that petitioner was aware of the understatements attributable to intervenor's Schedule C business and therefore recommended denying petitioner relief for 2010. For 2011 TE Bowman recommended denying relief after incorrectly concluding that the understatement was attributable to petitioner's business. With respect to tax year 2013, TE Bowman recommended denying relief after concluding that petitioner did not reasonably expect that the tax liability would be paid. This conclusion was based on intervenor's allegation that petitioner was aware of their financial situation. TE Bowman gave little, if any, weight to petitioner's allegations of spousal abuse.

On March 17, 2017, respondent issued petitioner a final determination denying her request for innocent spouse relief for 2013. Respondent issued a final determination denying petitioner's request for innocent spouse relief for 2010 and 2011 on April 17, 2017.

**[*13]** Petitioner timely filed a petition with this Court seeking review of respondent's determinations. Pursuant to section 6015(e)(4) and Rule 325, intervenor subsequently became a party to this case, opposing relief. At trial respondent conceded that petitioner is entitled to section 6015(f) relief for the years at issue to the extent of the tax items attributable to intervenor.

OPINION

I.     Jurisdiction

The Tax Court is a court of limited jurisdiction and can exercise its jurisdiction only to the extent provided by Congress. Sec. 7442; Judge v. Commissioner, 88 T.C. 1175, 1180-1181 (1987); Naftel v. Commissioner, 85 T.C. 527, 529 (1985); see also Rules 13, 320(b). With respect to claims for relief from joint and several liability, the Court has three jurisdictional bases for reviewing a claim: (1) as an affirmative defense in a deficiency redetermination proceeding pursuant to section 6213(a); (2) as a stand-alone petition pursuant to section 6015(e) where the Commissioner has issued a final determination denying the requesting spouse's claim for relief or the Commissioner has failed to rule on the claim within six months of its filing; and (3) in the context of a petition for review of a lien or levy action pursuant to section 6320(c) or 6330(d). See secs. 6015(e), 6213, 6214, 6320(c), 6330(c)(2)(A)(i), (d); Maier v. Commissioner, 119 T.C. 267,

**[*14]** 270 (2002), aff'd, 360 F.3d 361 (2d Cir. 2004); see also Baumann v.

Commissioner, T.C. Memo. 2005-31.

Petitioner timely filed a petition with this Court contesting respondent's

final determinations denying her relief from joint and several liability for the years

at issue. Accordingly, this Court has jurisdiction to review petitioner's claim for

relief under section 6015(e).

II.     Evidentiary Matter

The parties filed simultaneous opening and answering briefs as directed by

the Court. Petitioner attached to her simultaneous answering brief several exhibits

that were not included in the stipulation of facts or offered into evidence at trial.

On May 9, 2019, without leave of the Court, intervenor filed a supplemental brief

which also contained several exhibits that were not included in the stipulation of

facts or admitted into evidence at trial.[11]

---

[11] At trial respondent objected to intervenor's proffer of several exhibits which were not provided to the other parties before trial. Because intervenor violated our Standing Pretrial Order's 14-day rule, we sustained respondent's objection. See, e.g., Rodriguez v. Commissioner, T.C. Memo. 2017-173 (excluding documents that were not timely exchanged where proponent's failure to comply with Standing Pretrial Order prejudiced the other party and proponent could not articulate a compelling excuse). Intervenor failed to articulate a compelling reason for his failure to timely exchange the proffered exhibits.

[*15] Statements in briefs do not constitute evidence. Rule 143(c); Evans v. Commissioner, 48 T.C. 704, 709 (1967), aff'd per curiam, 413 F.2d 1047 (9th Cir. 1969); Chapman v. Commissioner, T.C. Memo. 1997-147; Berglund v. Commissioner, T.C. Memo. 1995-536. The record in this case was closed at the conclusion of trial on November 26, 2018. Accordingly, the additional exhibits attached to petitioner's and intervenor's briefs are not part of the record and will not be considered by the Court.[12]

III.  Section 6015

Generally, married taxpayers may elect to file a joint Federal income tax return. Sec. 6013(a). If a joint return is made, the tax is computed on the spouses' aggregate income, and each spouse is fully responsible for the accuracy of the return and is jointly and severally liable for the entire amount of tax shown on the

---

[12]  To the extent intervenor's supplemental brief seeks to have us reopen the record, we decline to do so. Reopening the record for the submission of additional evidence lies within the Court's discretion. Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 331 (1971); Butler v. Commissioner, 114 T.C. 276, 286-287 (2000); see also Nor-Cal Adjusters v. Commissioner, 503 F.2d 359, 363 (9th Cir. 1974) ("[T]he Tax Court's ruling [denying a motion to reopen the record] is not subject to review except upon a demonstration of extraordinary circumstances which reveal a clear abuse of discretion."), aff'g T.C. Memo. 1971-200. In reviewing motions to reopen the record, we consider, among other things, whether the moving party had reason for the failure to produce the evidence earlier. Purvis v. Commissioner, T.C. Memo. 2020-13, at *30-*31. Intervenor has not articulated a compelling reason for his failure to timely produce the exhibits annexed to his supplemental brief. See supra note 11.

**[\*16]** return or found to be owing. Sec. 6013(d)(3); <u>Butler v. Commissioner</u>, 114 T.C. 276, 282 (2000). Nevertheless, under certain circumstances, a spouse who has made a joint return may seek relief from joint and several liability under procedures set forth in section 6015. Section 6015 provides a spouse with three alternatives: (1) full or partial relief under subsection (b), (2) proportionate relief under subsection (c), and (3) if relief is not available under subsection (b) or (c), equitable relief under subsection (f).

In this case respondent evaluated petitioner's entitlement to relief from joint and several liability under each alternative, and we have jurisdiction to do the same. <u>See</u> sec. 6015(e)(1). In doing so we apply a de novo standard and scope of review. <u>See</u> <u>Porter v. Commissioner</u>, 132 T.C. 203, 210 (2009). Petitioner generally bears the burden of proving that she is entitled to relief under section 6015.[13] <u>See</u> Rule 142(a); <u>Porter v. Commissioner</u>, 132 T.C. at 210; <u>Alt v. Commissioner</u>, 119 T.C. 306, 311 (2002), <u>aff'd</u>, 101 F. App'x 34 (6th Cir. 2004); <u>Stergios v. Commissioner</u>, T.C. Memo. 2009-15.

---

[13] Our findings of fact in this case are based on a preponderance of the evidence, and thus the allocation of the burden of proof is immaterial. <u>See</u> <u>Blodgett v. Commissioner</u>, 394 F.3d 1030, 1039 (8th Cir. 2005), <u>aff'g</u> T.C. Memo. 2003-212; <u>Knudsen v. Commissioner</u>, 131 T.C. 185, 189 (2008), <u>supplementing</u> T.C. Memo. 2007-340; <u>Martin Ice Cream Co. v. Commissioner</u>, 110 T.C. 189, 210 n.16 (1998).

**[\*17]** A.     Section 6015(b) and Section 6015(c) Relief

To qualify for relief pursuant to section 6015(b), the requesting spouse must establish that: (1) a joint return was filed; (2) there was an understatement of tax attributable to erroneous items of the nonrequesting spouse; (3) at the time of signing the return, the requesting spouse did not know and had no reason to know of the understatement; (4) taking into account all the facts and circumstances, it is inequitable to hold the requesting spouse liable for the deficiency in tax attributable to the understatement; and (5) the requesting spouse sought relief within two years of the first collection activity relating to the liability. Sec. 6015(b)(1). These conditions are stated in the conjunctive, and the taxpayer must satisfy all five in order to be awarded relief. See Alt v. Commissioner, 119 T.C. at 313. Accordingly, the failure of a taxpayer to satisfy any one of the elements precludes relief. Id.; Haltom v. Commissioner, T.C. Memo. 2005-209.

Section 6015(c) permits a requesting spouse to seek relief from joint and several liability and elect to allocate a deficiency to a nonrequesting spouse if the following conditions are met: (1) a joint return was filed; (2) at the time of the election, the requesting spouse was separated or divorced from the nonrequesting spouse or was not a member of the same household as the nonrequesting spouse at any time during the 12-month period ending on the date of the request for relief;

[*18] (3) the requesting spouse sought relief within two years of the first collection activity relating to the liability; and (4) the requesting spouse did not have actual knowledge, at the time of signing the joint return, of the item giving rise to the deficiency. Sec. 6015(c)(3).

Respondent argues that, with respect to 2010 and 2011, petitioner does not qualify for relief under section 6015(b) or (c) because she did not seek relief within two years of respondent's first collection activity. We agree.

On June 11, 2013, respondent issued petitioner and intervenor a CDP notice for 2010 and 2011. Respondent did not receive petitioner's first request until March 2016, which was more than two years after the issuance of the CDP notice. Accordingly, petitioner does not qualify for relief under section 6015(b) or (c) with respect to 2010 and 2011.

Respondent also argues that subsections (b) and (c) of section 6015 do not provide petitioner with relief for 2013 because that year involves neither an understatement nor a deficiency. We agree. Subsections (b) and (c) of section 6015 apply only in the case of "an understatement of tax" or "any deficiency" in tax, and do not apply in the case of underpayments of tax reported on joint tax returns. Sec. 6015(b)(1)(B), (c)(1); Hopkins v. Commissioner, 121 T.C. 73, 88 (2003); see also Block v. Commissioner, 120 T.C. 62, 66 (2003). Because

**[\*19]** petitioner seeks relief from an underpayment of tax for 2013, she is not entitled to relief under section 6015(b) or (c) for that year.

Because petitioner does not qualify for relief under section 6015(b) or (c) for the years at issue, she may look only to section 6015(f) for relief from joint and several liability.

B.      Section 6015(f) Relief

As directed by section 6015(f), the Commissioner has prescribed procedures to determine whether a requesting spouse is entitled to equitable relief from joint and several liability.  Those procedures are set forth in Rev. Proc. 2013-34, sec. 4, 2013-43 I.R.B. 397, 399-403.  Although the Court considers those procedures when reviewing the Commissioner's determination, the Court is not bound by them.  See Pullins v. Commissioner, 136 T.C. 432, 438-439 (2011); Rogers v. Commissioner, T.C. Memo. 2018-53, at \*112.  The Court's determination ultimately rests on an evaluation of all the facts and circumstances.  Porter v. Commissioner, 132 T.C. at 210.

Pursuant to the revenue procedure, the Commissioner conducts a multistep analysis when determining whether a requesting spouse is entitled to equitable relief under section 6015(f).  See Rev. Proc. 2013-34, sec. 4.  The requirements for relief under the revenue procedure are categorized as threshold or

[*20] mandatory requirements, streamlined elements, and equitable factors. A requesting spouse must satisfy each threshold requirement to be considered for relief. See id. sec. 4.01, 2013-43 I.R.B. at 399-400. If the requesting spouse meets the threshold requirements, the Commissioner will grant equitable relief if the requesting spouse meets each streamlined element. See id. sec. 4.02, 2013-43 I.R.B. at 400. Otherwise, the Commissioner will determine whether equitable relief is appropriate by evaluating the equitable factors. See id. sec. 4.03, 2013-43 I.R.B. at 400-403.

### 1. Threshold Requirements

The requesting spouse must meet seven threshold requirements to be considered for relief under section 6015(f). Rev. Proc. 2013-34, sec. 4.01. Those requirements are: (1) the requesting spouse filed a joint return for the taxable year for which relief is sought, (2) relief is not available to the requesting spouse under section 6015(b) or (c), (3) the claim for relief is timely filed, (4) no assets were transferred between the spouses as part of a fraudulent scheme, (5) the nonrequesting spouse did not transfer disqualified assets to the requesting spouse, (6) the requesting spouse did not knowingly participate in the filing of a fraudulent joint return, and (7) absent certain enumerated exceptions, the tax liability from

[*21] which the requesting spouse seeks relief is attributable to an item of the nonrequesting spouse. Rev. Proc. 2013-34, sec. 4.01.

Petitioner is claiming relief under section 6015(f) for the portions of the 2010 and 2011 understatements and 2013 underpayment attributable to intervenor's tax items only. Respondent concedes, and we agree, that petitioner has met the threshold conditions for relief. Intervenor has submitted no credible evidence to the contrary.

### 2. Streamlined Determination Elements

For the portions of the liabilities for which petitioner is eligible for relief under section 6015(f), Rev. Proc. 2013-34, sec. 4.02, sets forth circumstances under which the Commissioner will make a streamlined determination granting equitable relief to the requesting spouse. The requesting spouse is eligible for a streamlined determination by the Commissioner only in cases in which the requesting spouse establishes that she (1) is no longer married to the nonrequesting spouse (marital status requirement), (2) would suffer economic hardship if not granted relief (economic hardship requirement), and (3) did not know or have reason to know that the nonrequesting spouse would not or could not pay the underpayment of tax reported on the joint income tax return, or did not know or have reason to know that there was an understatement or deficiency on

**[\*22]** the joint income tax return (lack of knowledge requirement). Id. The requesting spouse must establish that she satisfies each of the three elements to receive a streamlined determination granting relief. Id.

### a. Marital Status Requirement

For purposes of this element a requesting spouse will be treated as being "no longer married to the nonrequesting spouse" if the requesting spouse is divorced from the nonrequesting spouse. See id. sec. 4.03(2)(a)(i), 2013-43 I.R.B. at 400.

The circuit court granted petitioner and intervenor a divorce on April 14, 2015, which predates petitioner's filing of her first request (February or March 2016) and respondent's denials of relief (March and April 2017). Accordingly, petitioner satisfies this requirement.

### b. Economic Hardship Requirement

Economic hardship exists if satisfaction of the tax liability, in whole or in part, would result in the requesting spouse's being unable to meet her reasonable basic living expenses. Rev. Proc. 2013-34, sec. 4.03(2)(b), 2013-43 I.R.B. at 401. The requesting spouse would suffer economic hardship if two tests are met: (1) either (a) the requesting spouse's income is below 250% of the Federal poverty level or (b) the requesting spouse's monthly income exceeds her reasonable basic

[*23] monthly living expenses by $300 or less, and (2) the requesting spouse does not have assets from which she can make payments toward the tax liability and still meet reasonable basic living expenses. Id.

Petitioner relies on wages and child support payments to pay her and her two daughters' basic living expenses. Petitioner's approximate monthly income is $5,210, and her reasonable basic monthly expenses are approximately $5,077. Petitioner's monthly income exceeds her reasonable basic monthly expenses by $133. Because this amount is less than $300, she meets the first prong of the economic hardship test.

The second prong of the test requires consideration of whether petitioner has any assets from which she can make payments towards the tax liabilities and still meet reasonable basic living expenses. Petitioner's assets, as reported on her Form 8857, are worth approximately $4,200, and they comprise a retirement account valued at $4,000, $100 in savings, and $100 in her checking account. The liabilities for the years at issue, however, exceed $30,000. Petitioner's income and assets are insufficient to cover those liabilities. If petitioner is not afforded relief, she will not have sufficient income to provide for her and her daughters' basic living expenses.

[*24] Respondent concedes that petitioner satisfies the economic hardship requirement. Intervenor disagrees, arguing that petitioner has not suffered from any financial hardship. However, intervenor has not offered any credible evidence contradicting the income, assets, and expenses reported by petitioner and conceded by respondent. We therefore find that petitioner satisfies the economic hardship requirement.

c.  Lack of Knowledge Requirement

i.  Actual or Constructive Knowledge

If the requesting spouse knew or had reason to know of the understatement as of the date the joint return was filed, this factor will weigh against relief. Rev. Proc. 2013-34, sec. 4.03(2)(c)(i)(A), 2013-43 I.R.B. at 401. In an underpayment case we consider whether the requesting spouse reasonably expected the nonrequesting spouse to pay the tax liability reported on the return. Id. sec. 4.03(2)(c)(ii), 2013-43 I.R.B. at 401. According to the revenue procedure:

> A reasonable expectation of payment will be presumed if the spouses submitted a request for an installment agreement to pay the tax reported as due on the return. To benefit from the presumption, the request for an installment agreement must be filed by the later of 90 days after the due date for payment of the tax, or 90 days after the return was filed. * * * [I]t must not be unreasonable for the requesting

[*25] spouse to believe that the nonrequesting spouse will be able to make the payments contemplated in the requested installment agreement.

Id.

Respondent concedes and petitioner agrees that she did not know or have reason to know about the understatements for 2010 and 2011 and the underpayment for 2013. Conversely, intervenor asserts that petitioner was involved in their return preparation, giving her reason to know about the understatements and underpayment. We resolve this disagreement in favor of petitioner for the reasons below.

For tax years 2010 and 2011 petitioner neither knew nor had reason to know of the understatements on the joint income tax returns. With one negligible exception,[14] all adjustments to the 2010 and 2011 joint returns pertained to the tax items of intervenor. During the marriage petitioner worked as a waitress and spent the remainder of her time caring for her and intervenor's children. She was not involved in intervenor's business. Petitioner and intervenor maintained separate bank accounts at all relevant times. Thus, petitioner had no way of ascertaining intervenor's income and expenses.

---

[14] See supra note 8.

**[\*26]** Moreover, intervenor controlled the preparation and filing of the 2010 and 2011 joint returns. Other than providing intervenor with her tax documents, petitioner did not participate in the return preparation. Petitioner's lack of involvement was by the design of intervenor, who selected and dealt exclusively with the return preparers. After the returns were prepared, intervenor solicited petitioner's signature but did not give her an opportunity to review the returns. This practice left petitioner unable to verify the accuracy of the returns.

With respect to 2013, petitioner had no actual or constructive knowledge that intervenor would not or could not pay the underpayment of tax reported on the joint return. Petitioner and intervenor filed their 2013 joint return on October 6, 2014. They entered into an installment agreement with respondent on November 29, 2014, which was within 90 days of the filing date. Respondent concedes the presumption that petitioner reasonably expected payment of the liability by intervenor, and intervenor has offered no credible evidence to rebut this presumption.

We therefore find that petitioner satisfies the lack of knowledge requirement for the years at issue.

**[\*27]**                                    ii.        <u>Abuse</u>

Even if we were to find that petitioner had actual or constructive knowledge

of the understatements and underpayment, she would still satisfy the lack of

knowledge requirement because she was a victim of spousal abuse.

Notwithstanding the requesting spouse's knowledge or beliefs, that

knowledge may be negated if the nonrequesting spouse abused the requesting

spouse or maintained control of the household finances by restricting the

requesting spouse's access to financial information such that the nonrequesting

spouse's actions prevented the requesting spouse from questioning or challenging

payment of the liability.  Rev. Proc. 2013-34, sec. 4.02(3)(a), 4.03(2)(c)(i) and (ii).

"Abuse comes in many forms and can include physical, psychological, sexual, or

emotional abuse, including efforts to control, isolate, humiliate, and intimidate the

requesting spouse, or to undermine the requesting spouse's ability to reason

independently and be able to do what is required under the tax laws."  <u>Id.</u> sec.

4.03(2)(c)(iv), 2013-43 I.R.B. at 402; <u>see, e.g.</u>, <u>Stephenson v. Commissioner</u>, T.C.

Memo. 2011-16.  This Court takes all facts and circumstances into account in

determining the presence of abuse, <u>see</u> Rev. Proc. 2013-34, sec. 4.01, and requires

substantiation, or at a minimum, specificity, with regard to allegations of abuse,

<u>see</u> <u>Nihiser v. Commissioner</u>, T.C. Memo. 2008-135.  A generalized claim of

[*28] abuse is insufficient.  See Thomassen v. Commissioner, T.C. Memo. 2011-88, aff'd, 564 F. App'x 885 (9th Cir. 2014); Knorr v. Commissioner, T.C. Memo. 2004-212.

The administrative record in the case at bar provides a detailed account of intervenor's psychological abuse and physical intimidation of petitioner.  In her second request petitioner stated unequivocally that she had been a victim of spousal abuse or domestic violence.  She attached to the second request a letter containing detailed descriptions of intervenor's abusive behavior.  Such behavior included:  (1) locking petitioner out of the house when she was pregnant because he was angry that petitioner had left the house to run an errand and (2) screaming at petitioner and kicking household objects.  Petitioner also discovered three large kitchen knives underneath her mattress, causing her to fear for her and her daughters' safety.

The trial record reinforces the abuse allegations petitioner made during the administrative process.  At trial petitioner credibly testified that intervenor was controlling and prone to outbursts.  She also testified about the above-described incidents under oath.  We found petitioner's testimony credible and consistent with her allegations in the administrative record.

**[*29]** Intervenor argues that certain statements in petitioner's first request undermine her allegations of spousal abuse. In the first request petitioner checked the "No" box in response to the question of whether she had been a victim of spousal abuse or domestic violence. We disagree with intervenor about the degree to which this fact undermines petitioner's allegations.

In Diaz v. Commissioner, 58 T.C. 560, 564 (1972), we observed that the process of distilling truth from the testimony of witnesses, whose demeanor we observe and whose credibility we evaluate, "is the daily grist of judicial life." At trial petitioner credibly testified that she had checked the "No" box in error. As soon as she discovered her error, she filed her second request with CCISO.

Furthermore, petitioner's first request does not contradict her abuse allegations to the extent intervenor contends. Besides the "No" answer to the abuse question, petitioner's first request is otherwise consistent with her second request and trial testimony. Petitioner alleged in her first request that intervenor (1) made her afraid to disagree with him, (2) criticized or insulted her or frequently put her down, and (3) caused her to fear for her safety. The first request also recounts petitioner's discovery of the knives underneath her mattress.

On the basis of the administrative record and petitioner's credible testimony, we find it more likely than not that she was intimidated by intervenor's

**[\*30]** controlling and abusive behavior to the point that she was in fear for her safety and the well-being of their daughters. Intervenor's controlling and abusive behavior hindered petitioner's ability to question the understatements and underpayment and to participate meaningfully in the preparation of their joint returns. Accordingly, petitioner would satisfy the lack of knowledge requirement for the years at issue even if she had actual or constructive knowledge of the understatements and underpayment.

IV.    Conclusion

We find that petitioner is entitled to streamlined relief from joint and several liability pursuant to section 6015(f) for the years at issue to the extent of the tax items attributable to intervenor. We have considered all arguments made in reaching our decision and, to the extent not mentioned, we conclude that they are moot, irrelevant, and without merit.

To reflect the foregoing,

Decision will be entered under

Rule 155.