T.C. Memo. 2017-173

UNITED STATES TAX COURT

ROBERT DANIEL RODRIGUEZ AND NATALIA RODRIGUEZ, Petitioners <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14579-15.                    Filed September 6, 2017.

Robert Daniel Rodriguez and Natalia Rodriguez, pro sese.

<u>Sharyn M. Ortega</u> and Charles Wiseman (specially recognized), for

respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PUGH, <u>Judge</u>:  In a notice of deficiency respondent determined a deficiency

of $17,175 in petitioners' Federal income tax for 2012 and an accuracy-related

[*2] penalty under section 6662(a) of $3,435.[1] The issues for decision are: (1) whether Exhibits 3-P through 10-P, 12-P, and 13-P should be excluded from the record for petitioners' failure to comply with the 14-day rule;[2] (2) whether section 274(d) precludes petitioners from deducting $47,315 of car and truck expenses, $10,657 of travel expenses, and $6,493 of meals and entertainment expenses reported on their 2012 Schedule C, Profit or Loss From Business; (3) whether petitioners are entitled to deduct $7,471 of utility expenses on their 2012 Schedule C;[3] and (4) whether petitioners are liable for an accuracy-related penalty under section 6662(a) and (b)(1) and (2) for 2012 for an underpayment due to negligence, disregard of rules or regulations, or a substantial understatement of income tax.

---

[1] Unless otherwise indicated, section references are to the Internal Revenue Code of 1986, as amended, in effect for the relevant year. Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

[2] Respondent has withdrawn his objection to Exhibit 11-P, and therefore it is admitted.

[3] Respondent concedes that petitioners are entitled to a Schedule C utility expense deduction of $396 for the messaging service for Mr. Rodriguez' law office.

**[*3]**                                    FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. At the time the petition was timely filed, petitioners resided in San Ramon, California.

During 2012 petitioners lived in Danville, California. Mr. Rodriguez worked as an attorney at his own law firm, and Mrs. Rodriguez assisted him. Mr. Rodriguez' main office was in Modesto, California, which was approximately 65 miles from petitioners' home and about one-fourth mile from the Stanislaus County Superior Court. He often argued motions and trials at that court. He also drove to the City of Alameda, and Fresno, San Joaquin, Sacramento, and Contra Costa Counties to meet clients and sometimes to make court appearances. Sometime in 2012 petitioners opened a second office for Mr. Rodriguez' law firm in Walnut Creek.

At the calendar call on May 23, 2016, petitioners, for the first time, produced to respondent over 700 pages of documents including meal receipts, a mileage log, utility bills, car maintenance receipts, loan interest calculations, and a residential lease. The receipts had names or client matters written on them. The mileage log consisted only of dates and miles. The log did not include any information regarding locations between which petitioners traveled; nor did it

**[\*4]** include any business purposes for the travel.  In addition, the entries in the mileage log totaled 35,087 miles, far fewer than the 83,256 miles reported on petitioners' 2012 Schedule C.

## OPINION

## I.  14-Day Rule

The standing pretrial order issued to the parties on December 22, 2015, set forth two requirements relevant to the evidentiary ruling we must make:  (1) that the parties enter into a stipulation of facts to be submitted at the start of trial, if the case could not be settled, in which "[a]ll documents and written evidence shall be marked and stipulated in accordance with Rule 91(b)"; and (2) that "any documents or materials which a party expects to use * * *, but which are not stipulated, shall be identified in writing and exchanged by the parties at least 14 days before the first day of the trial session".  The standing pretrial order also advised the parties that "[t]he Court may refuse to receive in evidence any document or material that is not so stipulated or exchanged, unless the parties have agreed otherwise or the Court so allows for good cause shown".  The notice setting this case for trial also issued to the parties on December 22, 2015, referred the parties to the standing pretrial order.  Respondent objected to the admission of the documents produced at the calendar call, citing the 14-day rule.

**[\*5]** Rule 131(b) states that failure to comply with a standing pretrial order may subject a party to sanctions. The standing pretrial order warns that one possible sanction for violating the 14-day rule is the exclusion of evidence that was not exchanged in accordance with that requirement. Moretti v. Commissioner, 77 F.3d 637, 644 (2d Cir. 1996). The 14-day rule is intended to allow the opposing party the opportunity to review evidence to prepare any challenge or rebuttal. Kornhauser v. Commissioner, T.C. Memo. 2013-230, at \*9 n.4 (citing Dunn v. Commissioner, T.C. Memo. 1988-45), aff'd, 632 F. App'x 421 (9th Cir. 2016). "[T]he rule prevents an 'ambush' with last-minute evidence that could have been presented to the opposing party during preparation for trial." Id.

In weighing the appropriate sanction for violation of the 14-day rule, the Court considers whether the opposing party was prejudiced by the failure. See Thompson v. Commissioner, T.C. Memo. 2011-291, 2011 WL 6382704, at \*2 n.8; Morris v. Commissioner, T.C. Memo. 2008-65, 2008 WL 704208, at \*1, aff'd, 431 F. App'x 535 (9th Cir. 2011). In Morris v. Commissioner, 2008 WL 704208, at \*1 for example, we concluded that the Commissioner was prejudiced because the taxpayer's records were discovered at trial to be full of errors and the Commissioner had insufficient time to review the proffered documents.

**[\*6]**  We also consider why a party failed to comply with the standing pretrial

order, and absent good cause, we do not hesitate to enforce the 14-day rule.  See

Kaplan v. Commissioner, T.C. Memo. 2016-149, at \*9-\*10.  Petitioners claim that

respondent has not been prejudiced by their providing their documentary evidence

the day the case was called from the calendar for trial rather than 14 days before

trial as ordered.  We disagree.

Respondent's counsel was able to demonstrate at trial that the documentary

evidence was likely full of errors and was not reliable.  The cross-examination of

Mr. Rodriguez demonstrated the unreliability of the mileage log, for example:

| The Court: | Okay.  So the -- starting at your apartment going where? |
|---|---|
| The Witness: | To Stanislaus County Superior Court most of the time.  So Modesto, California, about a 70-mile or 65-mile route. |
| The Court: | And then did you also go to your office then? |
| The Witness: | I did, after court, the court appearances. Because usually court was at 8:30, I had to go straight there, or I was meeting with a client. |

                    *    *    *    *    *    *    *

| The Court: | And then how far was it from the court to your office? |

**[*7]**   The Witness:          Half a mile. No, I take that back, closer than that, quarter mile.

\*       \*       \*       \*       \*       \*       \*

By Ms. Ortega:

Q      Is it your contention that you went from your office to the Stanislaus Court 208 times in 2012?[4]

A      Unless the court was closed.  On a holiday or something like that, and I may have had another meeting or something.

\*       \*       \*       \*       \*       \*       \*

Q      How many miles does \* \* \*[the mileage log] say you traveled on July 4th?

A      One hundred twenty-nine.

Q      Could you please look at November 22nd, 2012, tell me how many miles you traveled, claimed you travel on that day?

A      One hundred twenty-nine.

Q      And would you please look at December 25th, 2012, and tell me how many miles your log claims you drove that day?

A      Well, 129, but I didn't --

Q      That –

---

[4] Of the 258 entries on the mileage log, 210 are 129 miles.  We also note that the log itself appears to have an erroneous total of miles for the entries.

**[*8]**  A      -- drive to my office on Christmas Day, I can tell you that.

In addition the cross-examination of Mr. Rodriguez demonstrated the lack of reliability of petitioners' meal and entertainment receipts:

By Ms. Ortega:

Q      Could you please look at those two receipts?

A      Yes.

Q      Are they both on the same date?

A      Yes --

Q      Are they both the same amount?

A      They are.

Q      Same location?

A      Yes, they are.

Q      Are the names written on them the same?

A      No.

     *     *     *     *     *     *     *

Q      Those two copies of receipts I handed you, they were -- what was the date on both of them?

A      One's hard to see, but it looks like it's -- they're both October 5th, 2012.

[*9]  Q     And the amount on both of them?

A     27.07.

Q     And the names written on them are not the same?

A     No.

     \*     \*     \*     \*     \*     \*     \*

The Court:     So while she's walking back, these are --
you give the date on the three receipts?

The Witness:     June 22nd, 2012.

     \*     \*     \*     \*     \*     \*     \*

By Ms. Ortega:

Q     The amount on each one?

A     Twenty-three dollars fifty-four cents.

Q     And are the names written on them [the] same on all
three?

A     No.

Q     Are they different on all three?

A     Or, no, wait a minute, there's -- okay, two of them are
the same, I see.  Yes, two of them are the same.

Q     Are they -- are, is the handwriting identical on each one,
they're in the exact same position on the receipt?

[*10] A    The two are identical, but this one -- well, the handwritings are identical but it's -- doesn't say the same thing.

*    *    *    *    *    *    *

Q    I've handed you a receipt, the amount is for $124.76, the time of this receipt is date -- is time-stamped 9:43 p.m.?

A    Yes.

Q    And the date is Valentine's Day, February 14th, 2012?

A    Yes.

*    *    *    *    *    *    *

Q    I handed you a stack of receipts, you could quickly thumb through them?

A    I did, yes.

Q    And written on each one is N. Rodriguez or Natalia Rodriguez dash immigration?

A    Yes.

Q    There's no client name on it?

A    Well, I -- she's –

Q    There's no client name on the receipt?

A    N. Rodriguez, she's my client.  I represent her in legal issues.

**[*11]** Q    We'll get back to that.  In what legal issues do you represent her?

A    Well, she's --

Q    In 2012, what legal issues did you represent her in?

A    Immigration.  She's asked me for legal advice regarding it.

Q    Did she pay you for that advice?

A    No.  Not all my clients pay me for legal advice.

Q    Did you have a written contract with her for that advice?

A    No.  I don't need to have a contract.

The receipts petitioners submitted appear rife with discrepancies and include duplicates and personal expenses.  Respondent identified these issues after one day of review.  With additional time we believe other errors would have been identified, and respondent could have verified the accuracy of the claims that Mr. Rodriguez offered in support of admissibility.  Thus this is the kind of evidence that the 14-day rule is intended to protect against.  Mr. Rodriguez, an attorney, had no explanation for his failure to comply with our order and notice, other than that he "did not have time to do it", even though the standing pretrial order was issued five months before trial.  He testified to his extensive court experience.  He should know, then, the importance of complying with court orders.  For this reason we

[*12] reject his argument that respondent should have filed a motion in limine or sought a hearing or continuance. Our Rules provide for, and petitioners were warned of the possibility of, sanctions for failure to comply; they should have been aware of the possible consequences.

Given the demonstrated unreliability of these documents, we hold that respondent was prejudiced by petitioners' failure to comply with the 14-day rule. We therefore exclude Exhibits 3-P through 10-P, 12-P and 13-P.

II. Petitioners' Tax Liability

Ordinarily, the burden of proof in cases before the Court is on the taxpayer. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933). Under section 7491(a), in certain circumstances the burden of proof may shift from the taxpayer to the Commissioner. Petitioners have not claimed or shown that they meet the specifications of section 7491(a) to shift the burden of proof to respondent as to any relevant factual issue.

Deductions are a matter of legislative grace, and a taxpayer must prove his or her entitlement to deductions. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Section 162(a) provides a deduction for certain business-related expenses. Taxpayers must maintain records sufficient to substantiate the section 162 deductions they

**[*13]** claim.  Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975),

aff'd, 540 F.2d 821 (5th Cir. 1976); see also sec. 1.6001-1(a), (e), Income Tax

Regs.

### A.  Expenses Under Section 274

Taxpayers are required to substantiate expenses underlying a claimed

deduction by maintaining records sufficient to establish the amounts of the

expenses and to enable the Commissioner to determine the correct tax liability.

Sec. 6001; Higbee v. Commissioner, 116 T.C. 438, 440 (2001).  Under the Cohan

rule, where a taxpayer is able to demonstrate that he or she has paid or incurred a

deductible expense but cannot substantiate the precise amount, the Court may

estimate the amount of the expense if the taxpayer produces credible evidence

providing a basis for the Court to do so.  Cohan v. Commissioner, 39 F.2d 540,

544 (2d Cir. 1930).  Section 274(d) supersedes the Cohan rule, however, imposing

strict substantiation requirements for certain expenses such as vehicle expenses,

travel expenses, and meals and entertainment expenses.  Sec. 1.274-5T(a),

Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

To meet these strict substantiation requirements, a taxpayer must

substantiate by adequate records or by sufficient evidence corroborating the

taxpayer's own statement:  (1) the amount of the expense; (2) the time and place of

[*14] the travel or use; and (3) the business purpose of the expense. Sec. 274(d).

To substantiate by adequate records, the taxpayer must provide: (1) an account

book, a log, or a similar record and (2) documentary evidence, which together are

sufficient to establish each element with respect to an expenditure. Sec. 1.274-

5T(c)(2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).

Section 274(d) contemplates that no deduction or credit shall be allowed on

the basis of mere approximations or unsupported testimony of the taxpayer.

Although a contemporaneous log is not required, corroborative evidence to

support a taxpayer's reconstruction "of the elements * * * of the expenditure or

use must have a high degree of probative value to elevate such statement" to the

level of credibility of a contemporaneous record. Sec. 1.274-5T(c)(1), Temporary

Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6 1985).

At issue is whether petitioners are entitled to a $47,315[5] car and truck

expense deduction, a $10,657 travel expense deduction, and a $6,493 meals and

---

[5] Petitioners' Schedule C reported 83,256 miles driven for business in 2012, and petitioners appeared to claim the standard mileage rate in lieu of actual costs of using their vehicles for business, as prescribed by Rev. Proc. 2010-51, sec. 4.02, 2010-51 I.R.B. 883, 884. See sec. 1.274-5(g)(1), Income Tax Regs. At the standard mileage rate for 2012, Notice 2012-1, sec. 2, 2012-2 I.R.B. 260, petitioners would be entitled to a deduction of $46,207 if they could establish that those miles were driven for business. Petitioners have offered no explanation for the discrepancy between this amount and the amount reported on their Schedule C.

[*15] entertainment expense deduction, as reported on their 2012 Schedule C. Because petitioners did not comply with the 14-day rule, no documentary evidence supports these expenses. Moreover, had we admitted petitioners' documents into evidence, we would conclude that they fell short of the strict substantiation requirements of section 274(d). Petitioners' mileage log simply states dates and the number of miles driven on each date, with no business purposes or locations. At trial respondent's counsel demonstrated that several of the entries that Mr. Rodriguez justified as trips to Stanislaus County Court, rather than commuting to his office, were on Federal holidays. Mr. Rodriguez stated that "I didn't * * * drive to my office on Christmas Day, I can tell you that", even though the log had an entry of 129 miles on that date. The log does not rise to the level of credibility of a contemporaneous record. See Aldea v. Commissioner, T.C. Memo. 2000-136, 2000 WL 371549, at *5 (holding that the taxpayer did not substantiate her automobile mileage expense deduction despite having a detailed mileage log because her mileage log did not appear to be contemporaneously written and her testimony about the mileage log was not credible).

Petitioners also offered, and we did not admit, receipts for vehicle maintenance and vehicle loan payments. Aside from the inadmissibility of those exhibits, petitioners failed to establish the business use of the vehicles and

[*16] therefore failed to meet the strict substantiation requirements with respect to their vehicle expenses.

The receipts petitioners offered to support meals and entertainment expenses of $6,493 are equally unreliable. Most of the receipts simply have an individual's name or case name written on them. The receipts fail to demonstrate the business purpose of the expense or whether petitioners met a client. In addition, several receipts were identical but for the different names handwritten on them, and several receipts were for items in the nature of personal expenses rather than business expenses.

As to the $10,657 travel expense deduction, petitioners admit that they did not bring any documents to substantiate their expenses with the exception of the toll and parking receipts totaling $215. These receipts fail to state any additional information, such as business purpose.

Because of petitioners' failure to comply with the 14-day rule, their self-serving testimony is the only evidence in the record supporting their claimed deductions. We do not find their testimony credible. Tokarski v. Commissioner, 87 T.C. 74, 77 (1986) (holding that the taxpayer's and his mother's testimony were insufficient where the testimony was self-serving and where it was not supported by corroborative testimony or evidence). We therefore sustain respondent's

**[\*17]** disallowance of petitioners' car and truck expense deduction, travel expense deduction, and meals and entertainment expense deduction.

B. Petitioner's Utility Expense Deduction

Because petitioners violated the 14-day rule, the utility bills in Exhibit 10-P were not admitted; and, even if they had been, they are deficient because they do not include sufficient information to allow us to determine whether the utility expenses were personal or business. The utility bills in Exhibit 11-P from Ring Central totaling $396, on the other hand, identify the messaging service associated with the telephone number of Mr. Rodriguez' law firm. With the exception of this $396 utility expense deduction that respondent has conceded, petitioners have not provided any admissible evidence of utility expenses attributable to the law firm. Except for the conceded amount, we find that petitioners have failed to substantiate the claimed utility expense deduction on their Schedule C. We therefore sustain respondent's disallowance.

III. Section 6662 Penalty

Respondent determined that petitioners were liable for a penalty under section 6662(a) because they were negligent or in the alternative they substantially understated their income tax liability. Section 6662(a) and (b)(1) and (2) imposes a penalty equal to 20% of the portion of an underpayment of tax required to be

**[\*18]** shown on the return that is attributable to "negligence or disregard of rules or regulations" and/or a "substantial understatement of income tax." Negligence includes "any failure to make a reasonable attempt to comply with the provisions of this title". Sec. 6662(c). We have defined negligence as the failure to exercise due care or the failure to do what a reasonable person would do under the circumstances. See Allen v. Commissioner, 92 T.C. 1, 12 (1989), aff'd, 925 F.2d 348, 353 (9th Cir. 1991); Neely v. Commissioner, 85 T.C. 934, 947 (1985). "'Negligence' also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly." Sec. 1.6662-3(b)(1), Income Tax Regs. An understatement of income tax is a "substantial understatement" if it exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d).

With respect to an individual taxpayer's liability for a penalty, section 7491(c) places the burden of production on the Commissioner, requiring the Commissioner to come forward with sufficient evidence indicating that imposition of a penalty is appropriate. Higbee v. Commissioner, 116 T.C. at 446-447. Once the Commissioner meets his burden of production, the taxpayer bears the burden of proving that the Commissioner's determination is incorrect. Id.; see Rule 142(a). If the Rule 155 computations confirm a substantial understatement, then

[*19] respondent has met his burden of production as to the applicability of the accuracy-related penalty on that basis. See sec. 7491(c). We hold that petitioners' failure to keep adequate records and to substantiate their claimed expenses was not what a reasonable person would do under the circumstances and constitutes negligence. Therefore petitioners are liable for the penalty unless they can demonstrate that respondent's penalty determination was incorrect, for example because there was reasonable cause for any portion of the underpayment and that they acted in good faith. See sec. 6664(c)(1); Higbee v. Commissioner, 116 T.C. at 446-447.

The decision as to whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. See sec. 1.6664-4(b)(1), Income Tax Regs. Generally, the most important factor is the extent of the taxpayer's efforts to assess the proper tax liability. Id.; see Halby v. Commissioner, T.C. Memo. 2009-204. We also consider the taxpayer's experience, knowledge, and education. Sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioners have not shown reasonable cause for the underpayment of tax for 2012. They offered no explanation for their underpayment, and we conclude that their substantiation would have been inadequate even had they complied with the

**[\*20]** 14-day rule.  In addition, Mr. Rodriguez is an attorney and was capable of reading the rules regarding substantiation (and our standing pretrial order).  We therefore hold that petitioners are liable for the penalty for an underpayment attributable to negligence under section 6662(b)(1).  We therefore need not consider whether there was a substantial understatement.  See New Phoenix Sunrise Corp. v. Commissioner, 132 T.C. 161, 187 (2009), aff'd, 408 F. App'x 908 (6th Cir. 2010); sec. 1.6662-2(c), Income Tax Regs.

Any contentions we have not addressed we deem irrelevant, moot, or meritless.

To reflect the foregoing,

Decision will be entered under

Rule 155.