# United States Tax Court

T.C. Memo. 2025-109

ANDREW MITCHELL BERRY AND SARA BERRY,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 10634-20.                    Filed October 21, 2025.

————

Andrew Mitchell Berry and Sara Berry, pro sese.

*Regina L. Ahn*, *Kris H. An*, *Jordan S. Musen*, and *Joanne H. Kim*, for respondent.


## MEMORANDUM FINDINGS OF FACT AND OPINION

PUGH, *Judge*: In a Notice of Deficiency dated February 14, 2020, respondent determined a deficiency of $88,695 and an accuracy-related penalty under section 6662(a)[1] of $17,739 for petitioners'[2] 2016 tax year.

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Andrew Berry appeared but Sara Berry did not when we called the case for trial. As a result of her failure to appear, we find that she is in default and hold that she is bound by the outcome of this case. *See* Rule 123(a) (stating that any party failing "to plead or otherwise proceed as provided by these Rules or as required by the Court . . . may be held in default by the Court"); Rule 149(a) ("The unexcused absence of a party or a party's counsel when a case is called for trial will not be ground for delay. The case may be dismissed for failure properly to prosecute, or the trial may proceed and the case be regarded as submitted on the part of the absent party or parties.").

**[\*2]** The Notice of Deficiency (1) disallowed petitioners' business expense deductions of $40,845 and $12,800 for Merrill & Associates Real Estate (Merrill) and $38,074 for Castle Construction (Castle), (2) determined that petitioners underreported Castle's gross receipts by $70,227, and (3) determined that petitioners underreported their income attributable to Phoenix Construction & Remodeling, Inc. (PCR), an S corporation, and another entity by $122,802.

Before trial respondent conceded (1) business expense deductions of $40,845 for Merrill and $36,720 for Castle, (2) $70,227 of Castle's unreported gross receipts, and (3) certain income attributable to PCR, leaving $77,195 in dispute.[3] After trial, petitioners conceded the remaining $12,800 for Merrill and $1,354 for Castle.

After these concessions, the remaining issues for decision are whether (1) Andrew Berry was a 50% shareholder of PCR for 2016 and, if so, whether petitioners failed to report $77,195 of income on Schedule E, Supplemental Income and Loss, attributable to Mr. Berry's interest in PCR and (2) petitioners are liable for an accuracy-related penalty for 2016 for an underpayment of tax required to be shown on a return due to a substantial understatement of income tax or to negligence under section 6662(a) and (b)(1) and (2). We also must address two related evidentiary issues: (1) whether Exhibits 47-P through 50-P, 52-P through 54-P, and 57-P should be excluded from the record and (2) whether Exhibit 60-R should be admitted under Rule 106 of the Federal Rules of Evidence.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found, and the stipulated facts are incorporated in our findings by this reference. Petitioners resided in California when they timely filed their Petition.[4]

---

[3] Petitioners reported a loss of $26,924, most of which was attributable to PCR. A very small amount was attributable to another entity that neither party discussed; we likewise will ignore that other entity.

The Notice of Deficiency increased the income reported on petitioners' 2016 tax return by $122,802 (including petitioners' 50% share of the total adjustments to PCR's gross receipts). Respondent's posttrial brief stated that after concessions the amount remaining in dispute for this adjustment is $77,195.

[4] The Notice of Deficiency is dated February 14, 2020, and the 90-day period to file a petition with this Court originally ended on May 14, 2020. Because of the COVID–19 pandemic, petitioners' deadline to file a petition with this Court was extended until July 15, 2020. *See* I.R.S. Notice 2020-23, 2020-18 I.R.B. 742.

[*3] I. *PCR activities*

PCR was a construction company that built and remodeled homes in California. Andrew and his father, Ronald Berry, each owned 50% of PCR in 2016.[5] And in 2016 Andrew performed work, billed clients, and collected receipts on PCR's behalf. He was listed as an authorized signer on a PCR bank account for all of 2016 as well.

PCR performed work for and issued "change orders" to at least two clients in 2016—Steve and Lisa Canchola and Lynn and Dean Stroud. PCR issued a change order, dated October 4, 2016, to the Cancholas listing an additional $74,382 owed to PCR. Later in October the Cancholas paid $74,382 to Showhauler Trucks, Inc. (Showhauler), in Indiana. This was for a motorhome that Ronald drove from Showhauler to California.

PCR also issued two change orders to the Strouds, totaling $21,008, for work completed on their home. Andrew, Ronald, and Ms. Stroud exchanged emails about the change orders. In one email Ronald stated that any payment should be made to PCR. The Strouds made cash payments for both change orders, and Andrew sent emails confirming receipt of those payments.

In 2016 PCR also received four bank deposits relevant to the issues we must decide. The first three totaled $58,000 and were from Three B's Development, LLC (Three B's), a limited liability company that was equally owned by Andrew, Ronald, and Scott. The fourth was a $1,000 deposit from Paul and Janis Switzer.

PCR timely filed its 2016 Form 1120S, U.S. Income Tax Return for an S Corporation. PCR reported that Andrew and Ronald each were 50% shareholders of PCR on Schedules K–1, Shareholder's Share of Income, Deductions, Credits, etc., for 2016. PCR did not report on its 2016 Form 1120S the money the Cancholas paid to Showhauler for PCR services, the Strouds' cash payments, or the four bank deposits.

Petitioners timely filed their joint 2016 Form 1040, U.S. Individual Income Tax Return. They reported two sole proprietorships—Castle and Merrill—on Schedule C, Profit or Loss From Business, and business activities for PCR, among others, on Schedule E. Petitioners

---

[5] We use first names for convenience to distinguish among Andrew, Ronald, and Andrew's brother, Scott Berry.

**[\*4]** reported a loss from PCR on their 2016 Form 1040 matching that reported on their Schedule K–1 from PCR.

## II.   *Respondent's determination*

Respondent determined a deficiency in petitioners' 2016 income tax and an accuracy-related penalty under section 6662(a) and (b)(1) and (2) for a substantial understatement of income tax or, in the alternative, negligence. The examining agent's direct supervisor approved the penalty on February 8, 2019, by signing the Civil Penalty Approval Form for the 2016 tax year. The Notice of Deficiency and petitioners' Petition to this Court followed.

## OPINION

## I.   *Evidentiary issues*

### A.   *Standing Pretrial Order*

The Standing Pretrial Order issued to the parties five months before trial set forth an important requirement relevant to the evidentiary ruling we must make: that all documents expected to be used at trial, other than those included in a stipulation of facts agreed to by the parties, be exchanged with the opposing party at least 14 days before the date set for trial.[6]

Rule 131(b) states that failure to comply with a standing pretrial order may subject a party to sanctions. In weighing the appropriate sanction for violation of the 14-day rule, we consider whether the opposing party was prejudiced by the failure. *See, e.g., Thompson v. Commissioner*, T.C. Memo. 2011-291, 2011 WL 6382704, at \*2 n.8; *Morris v. Commissioner*, T.C. Memo. 2008-65, 2008 WL 704208, at \*1, *aff'd*, 431 F. App'x 535 (9th Cir. 2011). We also consider why a party failed to comply with the Standing Pretrial Order. Absent good cause, we do not hesitate to enforce the 14-day rule. *See Kaplan v. Commissioner*, T.C. Memo. 2016-149, at \*9–10.

The Standing Pretrial Order warns that one possible sanction for violating the 14-day rule is the exclusion of evidence that was not timely exchanged. *See Rodriguez v. Commissioner*, T.C. Memo. 2017-173, at \*5 (citing *Moretti v. Commissioner*, 77 F.3d 637, 644 (2d Cir. 1996)). The

---

[6] The Standing Pretrial Order also advised that the Court might not admit into evidence any document not filed as a Proposed Trial Exhibit.

**[\*5]** 14-day rule is intended to allow the opposing party the opportunity to review evidence to prepare any challenge or rebuttal. *Kornhauser v. Commissioner*, T.C. Memo. 2013-230, at \*9 n.4 (citing *Dunn v. Commissioner*, T.C. Memo. 1988-45), *aff'd*, 632 F. App'x 421 (9th Cir. 2016). "[T]he rule prevents an 'ambush' with last-minute evidence that could have been presented to the opposing party during preparation for trial." *Id.* In *Morris*, for example, we concluded that the Commissioner was prejudiced because the taxpayer's records, which had been produced late, were discovered at trial to be full of errors. *Morris v. Commissioner*, 2008 WL 704208, at \*1; *see also Rodriguez*, T.C. Memo. 2017-173, at \*6.

Petitioners' production of documents both the night before and the morning of trial violated the 14-day rule. Because of the late production, respondent had insufficient time to review and verify the documents. *See Enis v. Commissioner*, T.C. Memo. 2017-222, at \*26. Further, respondent identified several inconsistencies and alterations within the documents, raising questions as to their authenticity and reliability. *See Rodriguez*, T.C. Memo. 2017-173, at \*11; *Griffin v. Commissioner*, T.C. Memo. 2010-252, 2010 WL 4791374, at \*10–12. Respondent has pointed out how, with more time, he would have verified the authenticity of the documents and arranged for other witnesses to testify as to their authenticity. *See Enis*, T.C. Memo. 2017-222, at \*24 (stating that the purpose of the 14-day rule is to allow the Commissioner an opportunity to challenge, rebut, or otherwise deal with the evidence).

Petitioners' excuses for their late production do not show good cause. When asked why these documents were produced so late, Ronald stated that he did not give the documents to Andrew until the Saturday before trial.[7] Ronald further testified that he was not aware of Andrew's case until three weeks before trial and that because he had been sick for the preceding three months, he could not provide the documents to Andrew any sooner.[8] Ronald denied knowing about Andrew's case earlier than three weeks before the trial even after we pointed out that Ronald opposed consolidation of Andrew's case with his own (at Docket No. 10932-20) in 2021. We consolidated Ronald's case with Andrew's over Ronald's objection but later severed Ronald's case to enter a

---

[7] Ronald was not a petitioner in this case and appeared only as a fact witness. He did not respect this distinction, however, and his efforts to help Andrew, from the stand and from the audience, undermined his credibility.

[8] Ronald was petitioners' only witness in their case-in-chief; Andrew did not testify. Respondent did call Andrew as a witness.

**[\*6]** stipulated decision. Ronald's excuse thus is not plausible; nor did we find him a credible witness.

We also note that this is not Andrew or Ronald's first foray into this Court.[9] We may take judicial notice of other Tax Court proceedings (including proceedings involving other parties) "if those proceedings have a direct relation to matters at issue." *Leyshon v. Commissioner*, T.C. Memo. 2015-104, at \*16 (quoting *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989)); *see also* Fed. R. Evid. 201(c)(1). In every case a Pretrial Scheduling Order was entered setting forth the 14-day rule.[10]

In this case in particular petitioners were reminded of the document production requirements well before Ronald's professed illness. Twenty months before trial we granted respondent's Motion to Compel Production of Documents. As trial approached, we also warned petitioners in off-the-record conference calls of the potential consequences of late production, including the possible exclusion of any documents exchanged after the deadline; now they must face those consequences.

Petitioners attempt to hide behind Ronald's status as a third party, arguing that nonparties are not covered by the 14-day rule. And they complain that respondent did not call certain witnesses. But petitioners bear the burden of proof, as we explain below. Petitioners offer no evidence that they took any steps to secure documents from Ronald such as by subpoena. They wanted to use documents from Ronald; they therefore needed to exchange those documents with

---

[9] Petitioners and Ronald have been parties to other proceedings before this Court during which the Court made them aware of the 14-day rule and the possible sanctions for violating it.

[10] In addition to this case, standing pretrial orders were entered at least once in all of Andrew's cases before this Court. *See, e.g.*, Standing Pretrial Order, *Berry v. Commissioner*, No. 11739-22 (T.C. Feb. 15, 2024); Standing Pretrial Order, *Berry v. Commissioner*, No. 11180-19 (T.C. July 30, 2020); Standing Pretrial Order, *Berry v. Commissioner*, No. 6584-19 (T.C. Oct. 29, 2019); Standing Pretrial Order, *Berry v. Commissioner*, No. 18196-16 (T.C. May 30, 2017); Standing Pretrial Order, *Berry v. Commissioner*, No. 9707-15 (T.C. Oct. 28, 2015). Likewise, this Court issued standing pretrial orders in all of Ronald's cases that were set for trial. *See, e.g.*, Standing Pretrial Order, *Berry v. Commissioner*, No. 7832-24S (T.C. May 14, 2025); Standing Pretrial Order, *Berry v. Commissioner*, No. 20086-23 (T.C. Aug. 7, 2024); Standing Pretrial Order, *Berry v. Commissioner*, No. 18635-16 (T.C. Sept. 26, 2017); Standing Pretrial Order, *Berry v. Commissioner*, No. 14090-15 (T.C. Apr. 12, 2016); Standing Pretrial Order, *Berry v. Commissioner*, No. 18162-14 (T.C. June 3, 2015).

**[\*7]** respondent at least 14 days before trial. The Standing Pretrial Order does not provide any exception for documents a taxpayer wants to use but does not possess. Indeed, our Rules permit discovery if justified. Petitioners cannot argue they did not have sufficient time to obtain the documents (especially taking into account the age of this case). They have not shown good cause for their delay.

Because petitioners' untimely production of documents prejudiced respondent and lacked good cause, we will exclude these documents.

  B. *Admissibility of Exhibits 49-P and 60-R*

At trial petitioners offered Exhibit 49-P into evidence. It contains 22 pages of invoices that petitioners alleged show PCR expenses that should offset PCR income. Petitioners also exchanged these invoices late; but unlike the documents we excluded above, copies of all invoices other than those on pages 5 and 6 of Exhibit 49-P were included in petitioners' administrative file, as respondent later confirmed in his posttrial brief. Thus, they were available to respondent for trial preparation even though petitioners had not identified them as possible exhibits. But respondent also noted that some of the invoices included in Exhibit 49-P contained substantive alterations, including additional handwritten notes, stamps marking certain invoices as "paid," and redactions.

Page 21 of Exhibit 49-P had the most significant changes: The top quarter of the page is missing, the beginning of a note is blacked out, and there is a "PAID" stamp in the lower right-hand corner. In posttrial briefing respondent withdrew his objection to page 21 of Exhibit 49-P and offered Exhibit 60-R as a substitute. Exhibit 60-R contains petitioners' trial version of page 21 as well as the version respondent found in petitioners' administrative file.

Rule 106 of the Federal Rules of Evidence provides that when "a party introduces all or part of a statement, an adverse party may require the introduction, at that time, of any other part—or any other statement—that in fairness ought to be considered at the same time." Because Exhibit 60-R contains the version of the invoice found at page 21 of Exhibit 49-P and the version that appears in the administrative file, we will admit Exhibit 60-R.

Three of the remaining invoices in Exhibit 49-P contain additional markings as compared to the versions found in the

**[\*8]** administrative file. Page 1 of Exhibit 49-P includes a stamp marking the invoice as "paid" and a handwritten note that says "cc: Berry," neither of which is on the version from the administrative file. Similarly, page 2 includes a handwritten note that says "cc: Berry," and page 10 includes a stamp marking the invoice as "paid" and two handwritten notes that say "cc: Berry" and "Lot 6 Kleck."

Pages 7 and 20 of Exhibit 49-P also do not match the copies found in the administrative file. The copy of the invoice at page 7 omits a second page found in the administrative file, notably showing a portion of a customer address that was covered by a stapled receipt tape on page 7. And on page 20, "Lot 4" is redacted.

This Court has discretion to admit documents that are produced untimely under the Standing Pretrial Order. *See Kornhauser*, T.C. Memo. 2013-230, at \*9 n.4 (citing *Moretti v. Commissioner*, 77 F.3d at 644). Because a version of these invoices appeared in the administrative file, we will admit Exhibit 49-P. But we will take into account the substantive alterations in considering the weight to give to these documents.

II.    *Burden of proof*

The taxpayer generally bears the burden of proving that determinations set forth in a Notice of Deficiency are in error. *See* Rule 142(a)(1); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). The burden of proof may shift to the Commissioner if the taxpayer introduces credible evidence with respect to the issue and satisfies the requirements of section 7491(a)(2). *See* § 7491(a)(1). Petitioners have not alleged that section 7491(a) applies and did not comply with substantiation requirements or maintain adequate records. *Id.* para. (2). Therefore, the burden of proof regarding the deficiency generally remains with petitioners.

In the case of unreported income, the Commissioner must establish "some evidentiary foundation" connecting the taxpayer with the income-producing activity, *see Weimerskirch v. Commissioner*, 596 F.2d 358, 361–62 (9th Cir. 1979), *rev'g* 67 T.C. 672 (1977), or otherwise demonstrate that the taxpayer received unreported income, *see Edwards v. Commissioner*, 680 F.2d 1268, 1270–71 (9th Cir. 1982). In the U.S. Court of Appeals for the Ninth Circuit, the court to which appeal in this case would lie absent a stipulation to the contrary, *see* § 7482(b)(1)(A), (2), the Commissioner may satisfy this requirement by

**[\*9]** introducing an evidentiary foundation to show that the taxpayer received the unreported income, *Hardy v. Commissioner*, 181 F.3d 1002, 1004 (9th Cir. 1999), *aff'g* T.C. Memo. 1997-97.

III.     *Petitioners' tax liability*

  A. *Andrew's status as shareholder*

Section 1366(a)(1) provides that shareholders of an S corporation shall take into account their pro rata shares of the S corporation's income, loss, deductions, and credits for the S corporation's taxable year ending with or in the shareholders' taxable year. An S corporation's shareholders must take into account the S corporation's income regardless of whether any income is distributed. *See Dunne v. Commissioner*, T.C. Memo. 2008-63, 2008 WL 656496, at \*8.

Record ownership of stock does not, on its own, determine who must take into account the S corporation's income for federal tax purposes. *See Walker v. Commissioner*, 544 F.2d 419, 422 (9th Cir. 1976), *rev'g* T.C. Memo. 1972-223; *Hoffman v. Commissioner*, 47 T.C. 218, 233 (1966), *aff'd per curiam*, 391 F.2d 930 (5th Cir. 1968). Rather, we look to the beneficial ownership of shares in determining stock ownership. *Hoffman*, 47 T.C. at 233. A shareholder may not be a beneficial owner of shares if an agreement with another party removed ownership, or provisions in the corporation's governing articles restricted or limited ownership rights. *See Dunne v. Commissioner*, 2008 WL 656496, at \*9.

Petitioners contend that Andrew should not be taxed on any income of PCR for 2016 because he allegedly was removed as an officer of PCR in March 2016. Even if Andrew was removed as an officer in March 2016, he still owned a 50% interest in PCR at the end of 2016. Petitioners did not allege, much less offer any evidence, that Andrew no longer owned any interest in PCR in 2016 or that any agreements restricted Andrew's ownership rights causing him to lose beneficial ownership.[11] PCR issued a Schedule K–1 for 2016 to Andrew,

---

[11] At trial, petitioners offered (but we did not admit) an agreement providing for the sale of Andrew's PCR stock to Ronald effective January 1, 2017. Admitting this document would not help petitioners. If a taxpayer has entered into an agreement providing for a sale of stock on a specific date, the taxpayer must provide "strong proof" that beneficial ownership of the stock was transferred at a time other than the date set forth in the agreement. *Lucas v. Commissioner*, 58 T.C. 1022, 1032 (1972) (citing *Schulz v. Commissioner*, 294 F.2d 52, 55 (9th Cir. 1961), *aff'g* 34 T.C. 235 (1960)). Petitioners offered no evidence, much less "strong proof," that ownership was transferred before January 1, 2017.

[*10] attributing to him 50% of the income of PCR. Petitioners claimed losses reported on their Schedule K–1 from PCR on their 2016 Form 1040. Because Andrew remained a 50% shareholder of PCR throughout 2016, petitioners must include in income Andrew's 50% share of PCR income for that year.

B.    *PCR's unreported income*

Respondent determined that PCR (1) received $59,000 of bank deposits that were not reported, (2) had $74,382 of diverted gross receipts that were paid to Showhauler directly instead of to PCR, and (3) had $21,008 of unreported cash receipts for two different change orders. Respondent introduced PCR's general ledger, bank records, canceled checks, invoices, and emails obtained during the IRS audit to tie the unreported income at issue to PCR. This establishes a sufficient "evidentiary foundation" connecting PCR to the income. Petitioners, therefore, bear the burden of proving that respondent's determinations of PCR's unreported income (and their 50% share of it) are incorrect. *See Hardy v. Commissioner*, 181 F.3d at 1004.

1.    *Bank deposits*

Of the $59,000 of bank deposits, petitioners do not dispute that the $1,000 check from Paul and Janis Switzer should be included in PCR's income. But petitioners contend that cash deposits from Three B's totaling $58,000 should not be included in PCR's income because they were repayment of an alleged loan of $60,000 dated September 17, 2015, between PCR and Three B's.

Ordinarily, proceeds from a bona fide loan are not considered income to the taxpayer because of the obligation to repay. *See Commissioner v. Tufts*, 461 U.S. 300, 307 (1983). A loan is bona fide only when the parties have a good-faith intent to establish a debtor-creditor relationship when the funds are advanced, meaning that the debtor intended to repay the loan, and the creditor intended to enforce the repayment. *See Beaver v. Commissioner*, 55 T.C. 85, 91 (1970); *Fisher v. Commissioner*, 54 T.C. 905, 909–10 (1970); *Berry v. Commissioner*, T.C. Memo. 2018-143, at *7, *aff'd*, 828 F. App'x 431 (9th Cir. 2020).

Petitioners failed to prove that the disputed deposits were loan repayments. At trial, we excluded as late a document that petitioners claimed substantiated the loan. Even had we admitted the document, it would not have established the existence of a bona fide loan. It reflected no interest charged, nor did it provide a fixed schedule for repayment.

[*11] PCR's 2016 Form 1120S does not report a loan to Three B's on its balance sheet for the beginning of the tax year. Had there been an outstanding loan, it should have been reported as a beginning of the year entry on PCR's 2016 Schedule L, Balance Sheets per Books. Petitioners thus did not establish that PCR and Three B's had a good-faith intent to establish a creditor-debtor relationship. *See Smiley v. Commissioner*, T.C. Memo. 2024-66, at *34. Accordingly, we sustain respondent's determination that the entire amount of bank deposits constituted income.

### 2. *Diverted gross receipts*

Petitioners conceded that the Cancholas paid Showhauler in lieu of PCR. But they contend, through Ronald's testimony at trial, that the $74,382 the Cancholas paid to Showhauler was not PCR income for two reasons.

First, Ronald testified that PCR lent him $100,000 so that he could purchase a motorhome from Showhauler.[12] Instead of PCR's giving $100,000 directly to him, the PCR loan was effected (in part) by the Cancholas' sending $74,382 to Showhauler to pay for Ronald's motorhome rather than to PCR (in satisfaction of their change order).

We did not find Ronald's testimony credible, nor did we identify any admitted evidence that substantiates a loan to him from PCR. But even if we did, the loan does not eliminate from PCR's income the Cancholas' payment for PCR services that was diverted to Showhauler. Income is taxed to the party who earns or otherwise creates the right to receive it. *See Helvering v. Horst*, 311 U.S. 112, 119 (1940). Ronald's theory for excluding the income appears to be a last-ditch attempt to throw something superficially plausible out to see whether it will stick.

Second, Ronald testified that even if the $74,382 was PCR's income, it should be offset by costs PCR incurred in generating the income. Petitioners have not produced any admissible evidence substantiating these alleged costs. *See* § 6001; *Berry v. Commissioner*, T.C. Memo. 2021-52, at *10 ("Any amount claimed as cost of goods sold must be substantiated, and taxpayers are required to maintain records sufficient for this purpose."). We therefore find that petitioners have

---

[12] We excluded from evidence a purported promissory note memorializing the loan (Exhibit 48-P) as it was exchanged late and respondent raised questions about its authenticity.

[*12] failed to meet their burden of proving that the $74,382 was not properly included in PCR's income.

### 3. *Change order cash receipts*

Petitioners also contend that the cash payments of $21,008 made by the Strouds for change orders that respondent attributed to PCR were payments to Ronald individually, not to PCR, and that Andrew only confirmed receipt of payment in his capacity as the Strouds' real estate agent.

But the evidence suggests that the change orders were for work done by PCR; PCR was the general contractor for the Strouds and Ronald, in his email, stated that the check should be made out to PCR. We again conclude that petitioners have not met their burden of proving that respondent's determination is incorrect.

### C. *Whipsaw*

Finally, at trial petitioners offered (but we did not admit) a document (Exhibit 57-P) that we assume was an attempt to argue the income should not be attributed to them because it was already attributed to Ronald and his wife, Linda (related to Docket No. 10932-20, their case for the 2016 tax year). A whipsaw occurs when different parties treat a transaction involving the same items inconsistently, creating the possibility that income could go untaxed or that both parties could deduct the same expense on their separate returns. *Maggie Mgmt. Co. v. Commissioner*, 108 T.C. 430, 446 (1997). In these situations the Commissioner may defend against inconsistent results by holding both parties liable for the deficiency. *See Powell v. Commissioner*, 91 T.C. 673, 679 (1988), *rev'd on other grounds*, 891 F.2d 1167 (5th Cir. 1990). And we have held "that the Commissioner may take inconsistent positions in order to protect the public fisc and ensure against a potential whipsaw effect." *Holdner v. Commissioner*, T.C. Memo. 2010-175, 2010 WL 3036440, at *7, *aff'd*, 483 F. App'x 383 (9th Cir. 2012).

Exhibit 57-P is a seven-page document that appears to contain a letter from the IRS to Ronald and Linda encouraging them to contact the Appeals Office about Docket No. 10932-20, a letter to their representative about that case, and a portion of a tax computation listing Ronald and Linda as the taxpayers.

The document is missing pages 1 through 4 of the tax computation and does not contain information sufficient to establish a whipsaw (that

**[\*13]** is, that the income was already taxed once because it was attributed to Ronald and Linda). Petitioners offered no other evidence of whipsaw. Even if we admitted Exhibit 57-P, we conclude that petitioners have not met their burden of proof to establish whipsaw.

IV.    *Section 6662 penalty*

Section 6662(a) and (b)(1) and (2) imposes an accuracy-related penalty equal to 20% of the portion of an underpayment of tax required to be shown on a return that is attributable to a "substantial understatement of income tax" or "[n]egligence or disregard of rules or regulations." An understatement of income tax is "substantial" if it exceeds the greater of 10% of the tax required to be shown on the return or $5,000. § 6662(d)(1)(A). Negligence is defined as "any failure to make a reasonable attempt to comply" with the Internal Revenue Code, and disregard includes "careless, reckless, or intentional disregard." § 6662(c). Negligence also includes any failure by the taxpayer to keep adequate books and records to substantiate items properly. *See Berry*, T.C. Memo. 2018-143, at \*14; Treas. Reg. § 1.6662-3(b)(1).

The Commissioner generally bears the burden of production with respect to a taxpayer's liability for accuracy-related penalties whether due to a substantial understatement of income tax or to negligence. § 7491(c). In particular the Commissioner must show that he complied with the procedural requirements of section 6751(b)(1) for the accuracy-related penalties imposed. *See Frost v. Commissioner*, 154 T.C. 23, 34 (2020). That paragraph provides that "[n]o penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination or such higher level official as the Secretary may designate." § 6751(b)(1). Once the Commissioner satisfies the burden of production, the taxpayer bears the burden of proving that the Commissioner's determination is incorrect or that the taxpayer has an affirmative defense such as reasonable cause. *See* § 6664(c); Rule 142(a); *Higbee v. Commissioner*, 116 T.C. 438, 446–47 (2001).

Respondent determined that petitioners are liable for an accuracy-related penalty attributable to a substantial understatement of income tax or, in the alternative, negligence or disregard of the rules and regulations for the 2016 tax year. The examining agent's direct supervisor approved in writing the assertion of the accuracy-related penalty under section 6662 for the 2016 tax year. Respondent therefore has met his burden of production.

**[\*14]** Petitioners did not dispute the penalty assessment, nor did they raise any affirmative defense such as reasonable cause. Should the understatement exceed 10% of the tax required to be shown on the return or $5,000, whichever is greater, petitioners are liable for the accuracy-related penalty.

Petitioners also failed to maintain adequate records to substantiate their income and expenses. Nor did they show that they made any effort to comply with the Internal Revenue Code. We therefore sustain the accuracy-related penalty, in the alternative, because of petitioners' negligence.

To reflect the foregoing,

*Decision will be entered under Rule 155.*